THOMAS B. McMAHON *vs.* WILLIAM McHALE & another.
MARGARET REIF *vs.* JOHN J. O'BRIEN & others.

Suffolk.    March 15, 1899. — October 18, 1899.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Employers' Liability Act — Defective Appliance — Negligence — Evidence — Matter within Discretion of Judge.*

In an action for personal injuries received from the fall of a single stiff-leg derrick erected for the purpose of moving granite to be cut by workmen stationed near by, the immediate cause of the accident being the rising of the guy-plate and goose-neck over the top of the gudgeon-pin, so that the mast was freed, the device in use to prevent such a rising being a key through a slot in the gudgeon-

pin above the goose-neck, with a piece of wire or a ring through a hole in the smaller end of the key, which key, with nothing in the hole, was found intact upon the ground near by after the fall of the mast, it may be found that the duty of using reasonable care that the derrick should be so erected, secured, and maintained as not to make the place where the stone cutters were to work unsafe by reason of the falling of the derrick while in ordinary and expected use, was one which rested upon the employer himself, and which he did not discharge by intrusting it to employees.

A derrick, erected for the purpose of moving from cars and placing granite conveniently for workmen to be cut by them, and of reloading the cut stones and disposing of the refuse, and which has been in constant use for four weeks at the time of an injury caused by its fall, may be found, in an action for the injury, to be a part of the employer's "ways, works, or machinery," within the meaning of St. 1887, c. 270.

If a person engaged in cutting stone near a derrick erected for the purpose of moving from cars and placing the stone conveniently for workmen to be cut by them, and of reloading the cut stones and disposing of the refuse, is injured by the fall of the derrick, it cannot be said, as matter of law, in an action for the injury, that he was negligent in working there, or that he had accepted the risk of injury.

In an action for personal injuries received from the fall of a single stiff-leg derrick erected for the purpose of moving granite to be cut by workmen stationed near by, the immediate cause of the accident being the rising of the guy-plate and goose-neck over the top of the gudgeon-pin, so that the mast was freed, the device in use to prevent such a rising being a key through a slot in the gudgeon-pin above the goose-neck, with a piece of wire or a ring through a hole in the smaller end of the key, which was in plain sight only thirty-three feet above the ground, evidence which tends to show that the employer was more or less at the place of the accident justifies a finding that he was personally negligent in the matter of keeping the derrick in a safe condition.

Evidence that a wire rope or an iron rod to hold the guy-plate and goose-neck of a single stiff-leg derrick down is a known and effectual appliance in common use, is admissible in an action for injuries caused by the fall of such a derrick not having that appliance.

If a single stiff-leg derrick is so set up as to allow a vertical play of the goose-neck and guy-plate of about four inches, evidence that the usual play of such parts in similar derricks is only one quarter or one half of an inch is competent, in an action for injuries caused by the fall of the derrick, to show that this one was so set up that ordinary care would have discovered that it needed better adjustment for safety.

Evidence of persons employed near a single stiff-leg derrick that they saw no inspection of the derrick and no one go up the mast to oil the parts at the top or for any purpose is competent, in an action for injuries caused by the fall of the derrick.

The testimony of expert witnesses, in an action for personal injuries caused by the fall of a single stiff-leg derrick, that it is the usual and ordinary practice to inspect daily such derricks kept in actual use, although it tends to raise collateral issues, may be admitted in the discretion of the judge.

TWO ACTIONS OF TORT, the first being for personal injuries sustained by the plaintiff, and the second for causing the death

of the plaintiff's husband, Joseph Reif, through the fall of a derrick, while in the employ of the defendants. At the trial of the cases together in the Superior Court, before *Fessenden*, J., the jury returned a verdict for the plaintiff in each case; and the defendants alleged exceptions, which appear in the opinion.

*T. W. Proctor*, for the defendants.

*P. M. Keating*, for McMahon.

*D. B. Ruggles*, for Reif.

BARKER, J. These actions grew out of the fall of a derrick near which the plaintiff McMahon, and Reif the husband of the other plaintiff, were at work. The derrick was of the single stiff-leg kind, and had been in place about four weeks, during which it had been in constant use ten hours a day. Although it often carried several tons, it fell with a load of about three hundred pounds. The stiff-leg alone remained in place, the fall of the boom and mast injuring McMahon and causing the death of Reif. McMahon had been at work less than two hours and Reif about two weeks.

The first action is against William McHale and John O'Connor, who were sub-contractors, to whom John J. O'Brien and his partner Sheehan had sublet the work. Another action mentioned in the bill of exceptions, brought by McMahon against the original contractors, was not submitted to the jury. The Reif suit was against O'Brien and Sheehan as partners, and William McHale and O'Connor as partners.

The declaration in McMahon's case against McHale and O'Connor has five counts, the first of which is at common law, and the verdict for the plaintiff was upon this count. The declaration in the Reif action had three counts under St. 1887, c. 270, and the acts in addition thereto. The first count alleged negligence of the defendants; the second, negligence of some person in their employ intrusted with the duty of seeing that their ways, works, and machinery were in proper condition; and the third, negligence of some person in the defendants' service and intrusted by them with, and exercising, superintendence. In this action the plaintiff had a verdict upon the first count against the defendants McHale and O'Connor only. The jury found specially that the accident occurred by reason of the negligence of the defendants McHale and O'Connor, and of one

Joseph McHale, who was in their employ, and who hired and discharged the workmen and gave orders to them or to their foreman. In McMahon's case the jury also stated that their finding in his favor upon the first count was upon the first and second ground, which means by reason of the negligence of McHale and O'Connor in not furnishing a safe place for the plaintiff to work in, and in not furnishing suitable tools, instruments, and materials for him to work with.

The actions were tried together, and are here upon exceptions entered and prosecuted by the defendants McHale and O'Connor. The exceptions relate to the admission of evidence and to rulings of law. Such as were to the admission of evidence tending to prove that the original contractors were liable have been made immaterial by the verdicts, which are against the subcontractors only.

The exceptions to the admission of evidence which are argued were to evidence which tended to show that the derrick was defective because it did not have a wire rope or rod extending from the goose-neck to the foot-block, to hold down the goose-neck; that the play of the goose-neck up and down the gudgeon-pin at the top of the mast was too great for safety; that the derrick was not inspected; and that such derricks, in constant use, ought to be inspected daily.

Of the exceptions which relate to rulings of law, that to the refusal of the court to require the plaintiffs to elect between the several counts of their declarations, and those which relate to the other counts than the first count of each declaration, are not argued.

In substance, the defendants contend that the selection and erection and the maintaining of the derrick, as well as its use in the work, were properly intrusted to fellow workmen of the stone cutters, and that the defendants were not answerable to them for the negligence of any person concerned therein, and that the derrick was not a part of the defendants' ways, works, and machinery, within the meaning of St. 1887, c. 270.

There was evidence tending to show that the derrick and its appliances were selected by O'Connor, one of the employers, and that it was erected at the place where it was in use for the purpose of moving granite from cars, to be cut by stone cutters,

who were expected to work near it; of placing the granite conveniently for them, and of reloading the cut stones and disposing of the refuse; and that this use of the derrick, though temporary, had continued for four weeks at the time of the accident. Neither of the stone cutters who were hurt was in the employment of the defendants when the derrick was set up, or had anything to do with its management, and they and the other stone cutters were in the line of their duty in working so near it that they were liable to be hurt if it fell. The immediate cause of the accident was the rising of the guy-plate and goose-neck over the top of the gudgeon-pin, so that the mast was freed. The device in use to prevent such a rising was a key through a slot in the gudgeon-pin above the goose-neck, with a piece of wire or a ring through a hole in the smaller end of the key. The key, with nothing in the hole, was found intact upon the ground near by, after the fall of the mast.

Under these circumstances, we are of opinion that it might be found that the duty of using reasonable care that the derrick should be so erected and secured and maintained as not to make the place where the stone cutters were to work unsafe by reason of the falling of the derrick while in ordinary and expected use, was one which rested upon the employers themselves, and which they did not discharge by intrusting it to employees; and that the derrick and its appliances might be found to be a part of the ways, works, and machinery within the meaning of St. 1887, c. 270. For the time being, and with respect to workmen employed in cutting stone near it, the derrick was a piece of machinery, part of the fitting up of a stone yard, as the stage used in building piles of wood was part of the fitting up of a wood yard in *Prendible* v. *Connecticut River Lumber Co.* 160 Mass. 131, 139, rather than an appliance to be put together and set up and moved from place to place by workmen who were using it, as was the derrick in *McGinty* v. *Athol Reservoir Co.* 155 Mass. 183, 187. See *Elmer* v. *Locke*, 135 Mass. 575, and cases cited; *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1; *Joyce* v. *Worcester*, 140 Mass. 245; *Leslie* v. *Granite Railroad*, 172 Mass. 468.

As neither of the men injured was concerned with the derrick, except that it was so near the place where they were at work that it might injure them if it should fall, we think it could not

be said, as matter of law, that they were negligent in working there, or that they had accepted the risk of injury.

We think the evidence which tended to show that each of the employers was more or less at the place of the accident, justified a finding that they were personally negligent in the matter of keeping the derrick in a safe condition. If the key had been properly secured, and kept secure, it would seem to have been impossible for the accident to have occurred as it did, and the key was in plain sight, only thirty-three feet above the ground. It might be found that it was the personal duty of the employers, when present, to see whether the key and ring were in place.

The evidence that a wire rope or an iron rod to hold the guy-plate and goose-neck down was a known and effectual appliance in common use was plainly admissible. *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 294. *Myers* v. *Hudson Iron Co.* 150 Mass. 125. *Veginan* v. *Morse,* 160 Mass. 143. *McCarthy* v. *Boston Duck Co.* 165 Mass. 165.

If the derrick was so set up as to allow a vertical play of the goose-neck and guy-plate of some four inches, this would tend to the instability of the derrick; and we think that evidence that the usual play of such parts in similar derricks was but a quarter or a half inch, was competent to show that this one was so set up that ordinary care and diligence would have discovered that it needed a better adjustment for safety. See *Veginan* v. *Morse, ubi supra.* So great an amount of play, if unusual, would arrest, it is probable, the attention of any one who was responsible for the condition of the machine.

The evidence of the employees who testified that they saw no inspection of the derrick, and no one go up the mast to oil the parts at the top, or for any purpose, had some tendency to prove that there was no inspection, and was therefore competent. See *Spicer* v. *South Boston Iron Co.* 138 Mass. 426 ; *Connors* v. *Durite Manuf. Co.* 156 Mass. 163.

Each of the other exceptions now insisted upon was to a question asked of a witness under examination for the plaintiff; and the objection was not to the form of the question or of the answer. The larger number relate to the contention that the derrick ought to have been inspected daily. Experts were

allowed to testify that it was the usual and ordinary practice to inspect daily stiff-leg derricks kept in actual use.

This evidence tended to raise collateral issues, and if for that reason it had been excluded, in the discretion of the presiding justice, such action would hardly be held erroneous.   See *Bailey* v. *New Haven & Northampton Co.* 107 Mass. 496; *Hinckley* v. *Barnstable,* 109 Mass. 126; *Hill Manuf. Co.* v. *Providence & New York Steamship Co.* 125 Mass. 292, 303; *Marvin* v. *New Bedford,* 158 Mass. 464; *Craven* v. *Mayers,* 165 Mass. 271; *French* v. *Columbia Spinning Co.* 169 Mass. 531; *Grand Trunk Railroad* v. *Richardson,* 91 U. S. 454, 469.   But evidence which may raise collateral issues is not always to be excluded.   Upon the issue whether reasonable care has been used to furnish a safe working-place or machinery, evidence that other appliances than those furnished are well known, and in common use, and that certain repairs are commonly made by the workmen themselves as the necessity for them is from time to time disclosed in the progress of the work, is often admitted.   See *Wheeler* v. *Wason Manuf. Co., Myers* v. *Hudson Iron Co., Spicer* v. *South Boston Iron Co., Connors* v. *Durite Manuf. Co., Veginan* v. *Morse, McCarthy* v. *Boston Duck Co., ubi supra ; McGee* v. *Boston Cordage Co.* 139 Mass. 445.

When evidence of this general class is offered, very much must be left to the discretion of the presiding justice, who can see best whether the collateral issues which may be raised will place an undue burden upon the party against whose contentions the evidence is directed, or tend to unduly prolong the trial, or confuse the jury.   The machine, to the construction, adjustment, and usual management of which all the evidence was directed, was one in common use among builders and contractors, and how it should be set up, adjusted, and maintained to keep it reasonably safe while in use was a question upon which the usual and ordinary experience of those who used single stiff-legged derricks would be instructive.   In the nature of things, an investigation of the circumstances under which a certain machine designed to do a definite class of work will be used will not call for the investigation of a very wide range of collateral transactions.   Such an inquiry differs much from one involving the methods of building highways in a county, or a wide extent of country, or into

the means taken by different railroad corporations to care for their bridges. Within limits which usually may be left with safety to the discretion of a presiding judge, there is little or no logical difference between an inquiry as to what means and appliances are in common use in connection with a certain machine, and an inquiry as to how such machines are commonly adjusted, and kept in order for use.

We do not deem it necessary to sustain the defendants' exceptions to the admission of evidence.      *Exceptions overruled.*