CLARENCE L. MELVIN *vs.* PENNSYLVANIA STEEL COMPANY.

Suffolk.   November 11, 1901. — January 1, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Evidence*, Circumstantial, Inference of fact.   *Negligence*, In a building in process of construction.

If, in an action of tort for negligence, a plaintiff shows facts from which negligence fairly may be inferred, he is entitled to go to the jury without direct evidence of the cause of the injury and without pointing out the particular act or omission that caused it.

In an action against a steel company, whose employees were working fifty feet above the floor of a building in process of construction removing rivets from

steel columns, for an injury caused by a cold chisel falling on the head of the plaintiff, it appeared, that the plaintiff was rightfully upon the premises, that he was injured by some object falling from above and striking him on the head, that as he went down a cold chisel fell close by him, and that after he had been helped up a chisel on which were cut the defendant's initials was picked up near him. The chisel was made to fit upon a wooden handle but was detached from it when found. It appeared, that the manner of using the chisels was for one workman taking the handle to hold the chisel against the rivet to be cut while another struck it with a sledge hammer. Nobody saw the chisel hit the plaintiff and nobody saw where it came from. *Held*, that on this evidence a verdict for the plaintiff was justified; that the jury were warranted in finding that the plaintiff was injured by a chisel which belonged to the defendant while in use by its servants or under their control, that the defendant's servants knew or ought to have known that persons were likely to be passing below, and that the jury might have found that with proper care in adjusting the chisel to its handle and in its use, it would not fall upon a person below.

Tort for injuries alleged to have been caused by the plaintiff being struck on the head by a cold chisel belonging to the defendant and negligently used by the defendant's servants in cutting rivets from certain steel columns. Writ dated July 21, 1899.

The declaration alleged, that the plaintiff was an employee and foreman of the Boston Electric Light Company and was in its behalf superintending the building of a shed or covering for certain engines and boilers and their foundations, and, after referring to the fact that the defendant was engaged in cutting iron and steel rivets, alleged, that in cutting such rivets the defendant used a steel cold chisel adjusted to a wooden handle, but so negligently and insecurely placed thereon that it was likely to fly off the handle, and fall upon and strike any person working upon the shed or covering; that the cold chisel used by the defendant, by reason of being so negligently and insecurely placed on the handle, and by reason of the negligence of the defendant and its servants in the use of it, came off its handle and fell a distance of fifty feet, striking the plaintiff upon the head and cutting, bruising and greatly injuring him.

At the trial in the Superior Court, before *Gaskill*, J., it appeared, that the accident happened in the engine or dynamo room of the power station of the Boston Electric Light Company then in process of erection. In the north wall of this engine room were steel columns fifty-eight feet high and set sixteen feet apart, and similar columns were set opposite to them in

the dividing wall between the engine room and the boiler room.  According to the plans, roof trusses of steel were to span the space of eighty-two feet resting on the tops of these columns.  The plans for the walls called for masonry completely enclosing the steel columns to their full height.  At the time of the accident these walls were only partly erected, and the columns extended some distance above the top of the wall in the condition that it then was.  Long girders fifty feet from the ground ran the entire length of each side of this room, being riveted to the columns; and at the time of the accident the masonry walls had not reached these girders.  Some time before this accident, owing to causes not material, all the steel trusses over the lower end of the engine room had fallen to the floor, and the tops of the columns upon which they had rested above the girders had been bent over and twisted out of shape.*  Before the accident in this case, the Boston Electric Light Company had made a contract with the defendant by which the defendant agreed to cut out and remove the fallen trusses, to cut off the tops of the columns above the girders and to splice new tops to the columns.  At the time of the accident they had completed the work of cutting out and removing the steel trusses upon the floor of the building, and had begun the work of cutting out the tops of the columns.  They had no stagings to do this, but were able to do their work standing upon the girder running lengthwise of the building, and in their work were directly above the masonry wall.  At the time the plaintiff was injured, the bricklayers were working upon the masonry walls, and in other parts of the building there were large numbers of carpenters and laborers, all working at the same time that the cutting of the steel work was going on.

The plaintiff testified, that he was in the employ of the Boston Electric Light Company, and was the general superintendent of carpenter's work for that company ; that before August 17, 1898, he had been instructed by the president of the company to build a wooden roof over the engine beds, which was to extend out some fifty feet from the boiler room wall in width, and one hundred and ten feet long, so that the men could work there in all weathers and be better protected ; that he had charge of this work, and between three and four o'clock in the afternoon of August 17,

* See *Sullivan* v. *Boston Electric Light Co.* 181 Mass.

1898, drove over to the building to see how the work was getting along; that just as he got there the men were rolling through the door on rollers a wooden truss fifty feet long and about eight to ten feet rise, which was to be placed on posts and used in the construction of this wooden roof, and that he came alongside of the truss and put his hand on it; that the truss was a little over half way through the door, and the end nearest the engine beds was about fifteen or twenty feet from them, and moving towards them; that he was a little beyond the centre of the truss, and steadying it; that some twelve or fiften men were moving it on rollers; that there were working in or about the building fifty or more men, masons and iron workers; that the iron workers were working some fifty feet up overhead, and, as far as he could observe, were trimming up or cutting rivets, or fixing the damaged portions of the uprights; that they were working on the crane girder; that he could not tell how many there were, but there were several; that he had seen them cutting rivets, but not at that time; and that they used in cutting them cold chisels similar to the one shown him at the trial.

The plaintiff then described the way that the chisels were fitted to the handles, how the handle was held, and how the chisel would be struck by another man using a sledge or hammer.

He further testified, that he thought the iron workers were exactly over the wall, on the girder; that he was inside the building, and they were over him, that the first indication that he had of any accident was that he felt himself down, it seemed as if something had stunned him, and the next thing he remembered he was putting his hand to his head; that he knew the Pennsylvania Steel Company was doing the iron work on the building; that after the accident, when he was there and before he went out of the building, some one handed him a piece of iron, but he did not know who it was, and he identified the cold chisel shown to him as the piece of iron handed to him, which had been in his possession ever since; that from the time the building was started he had charge of all the wood work throughout the building; that the wood work was progressing while the other work was going on, and he had been there every day and sometimes twice a day, and knew the work that was going on there.

The cold chisel which was shown to the plaintiff and identified by him at the trial was taken by the jury to the jury room. It was a piece of iron or steel five and one fourth inches in length and two inches wide, being two inches thick from one end to a point near the middle and then tapering down to an edge at the other end with a hole in it near the middle for the insertion of a handle. It weighed two pounds and two ounces and on its sides were stamped or cut in eight separate places the letters " P. S. Co."

One Thompson, a witness for the plaintiff, testified, that he was a carpenter and was working for the Boston Electric Light Company on August 17, 1898, having been working about the place for some time; that when the truss was being rolled in he was on the opposite side of the truss from the plaintiff, that the first thing he noticed was the plaintiff going down and this chisel going down close by him, that he saw both go down about the same time, and that some person there picked up the chisel and handed it to the plaintiff, and, being asked to identify the chisel shown to him, said that it was that or one very similar to it, that it was of that shape and size.

At the close of the evidence, the defendant requested a ruling that upon all the evidence the plaintiff could not recover. This was refused by the judge and the defendant excepted. The defendant asked the judge to instruct the jury that the plaintiff must do more than show that the piece of steel fell and injured the plaintiff and that the piece of steel belonged to the defendant; that he must go further and show the jury that the fall was caused by some negligent act of the defendant or its servants. This request the judge refused to give, and charged the jury generally, that the plaintiff must prove by a fair preponderance of the evidence that he received the injury in the manner and from the cause stated in the declaration; that the defendant's servants were where they had a right to be, and that they were using tools such as they had a right to use; that the plaintiff had given no account whatever as to what work was being done, or whether any work was being done at that particular moment, or just at the moment the accident happened, by the employees of the steel company; that it did not appear that they were using this particular cold chisel or any other, or that they were doing any work whatever.

The judge also said : " Are you satisfied, by a fair preponderance of the evidence, that that piece of metal struck the plaintiff on the head ? Nobody saw it ; it is only by way of inference. Now, are the inferences which are to be drawn from such evidence as you have fairly strong enough for you to say that you are satisfied that that did hit the plaintiff? If you are, then how did it come to fall, or from whose hands did it fall ? If it did not fall from the hands of some employee of this defendant company, then of course they have nothing to do with it, and should not be made liable. If it did, then you must be satisfied that it was in consequence of some negligence, either in the way in which the handle was placed in the head, or the use that was being made of it at the time. You will take such evidence as you have here, the burden being upon the plaintiff to satisfy you of that negligence of the defendant, and if you say that you are fairly satisfied of that, then the first proposition which it is necessary for the plaintiff to prove has been proved. If not, why, that is the end of the case for the plaintiff."

The defendant excepted to the refusal of the judge to give the instruction requested, and to a portion of the charge of the judge including the passage above quoted.

The jury returned a verdict for the plaintiff in the sum of $2,000, and by agreement of the parties, the judge reported the case for the consideration of this court. If the ruling that upon all the evidence the plaintiff could not recover should have been made, or the instruction asked for by the defendant should have been given, or if the instructions given were incorrect, judgment was to be rendered for the defendant; otherwise, the verdict was to stand.

*R. F. Sturgis*, for the defendant.

*J. S. Patton*, for the plaintiff.

KNOWLTON, J. The question in this case is whether there was evidence that the plaintiff received his injury through the negligence of the defendant or its servants.

The testimony tended to show that when the plaintiff was injured he was rightfully on the premises and was in the exercise of due care; that the defendant's employees were working on the steel frame of the building, almost directly above him, striking with sledges and hammers; that they had cut many

rivets and done a great deal of cutting; that in cutting rivets they used cold chisels similar to the one produced at the trial, holding them by means of a handle and striking them with a hammer; that the plaintiff was injured by some object falling from above and striking him on the head; and that as he went down a cold chisel fell close by him; and that after he had been helped up a chisel on which were cut the defendant's initials was picked up near him and handed to him by some one present. There was no evidence of any other object falling at or about that time. It did not appear that the other workmen employed in different parts of the building were using or had occasion to use cold chisels, or that any one other than the defendant's employees was standing or working above the plaintiff in that part of the building.

On this evidence the jury were warranted in finding that the plaintiff was injured by a chisel which belonged to the defendant and fell while in use by its employees, or while under their control. The chisel produced was picked up near the place soon after the plaintiff fell, and bore marks of the defendant's ownership. The defendant's servants knew, or ought to have known that persons might rightfully be passing below. Apparently they could see them. The jury might have found that with proper care in adjusting the chisel to its handle and in its use, it would not fall upon a person below. *Mahoney* v. *New York & New England Railroad,* 160 Mass. 573, 579. *White* v. *Boston & Albany Railroad,* 144 Mass. 404. *Uggla* v. *West End Street Railway* 160 Mass. 351. *Manning* v. *West End Street Railway,* 166 Mass 230. *Graham* v. *Badger,* 164 Mass. 42.

The plaintiff was not bound to show the particulars of the defendant's negligence. It was enough if he showed facts from which negligence properly might be inferred. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407, 409. In the absence of any evidence from the defendant to explain the facts relied on, the jury might well find for the plaintiff.

*Judgment on the verdict.*