CARL ERICKSON *vs.* AMERICAN STEEL AND WIRE COMPANY OF NEW JERSEY.

ANNIE M. JOHNSON, administratrix, *vs.* SAME.

EDWARD G. MATTHEWS *vs.* SAME.

Worcester.   October 1, 1906. — October 17, 1906.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability.   *Evidence,* Circumstantial, Opinion: experts, Remoteness.

In an action by a workman in a factory against his employer for personal injuries from the bursting of a cast iron header or section of steam pipe connected with a boiler and which with other similar sections of pipe, each connected with a separate boiler, formed bolted together a continuous line of pipe constituting

the steam main of the defendant's power plant, it appeared that, although the defendant purchased the headers at a reputable foundry where they were tested, the machine work upon the castings was done at the defendant's shop and the steam main was put together and put in place with its connections to the boilers by the defendant's employees and according to a design both as to construction and connections made by the defendant's engineer, that the work during construction was examined by a competent inspector, that the defendant applied to the headers and the steam main the usual tests before the plant was used and made the customary inspection while the plant was in operation. There was evidence from competent experts that the construction of the plant was not proper mechanically, because sufficient arrangements were not provided for the expansion of the steam main, the want of which would have a tendency to weaken the joints throughout the length of the pipe, and because no drip cocks were provided as they should have been along the line of the pipe, and also because cast iron was an unsuitable material of which to make the headers on account of its brittleness and rigidity and because the method of connecting the feed pipes from the boilers to the main pipe was improper. *Held*, that the fact that the defendant purchased the headers from a reputable manufacturer was no defence, even assuming that, because the material was in common although not exclusive use, the use of cast iron headers was not negligence, for the castings after their purchase were finished by the defendant and incorporated into a structure according to the design of the defendant's engineer, the faulty character of which could have caused the break if the castings had had no hidden defect; and that the evidence of competent inspection, although it tended to show that the defendant took all the precaution which ordinary prudence required, was not a defence to its liability for a failure to use due care in providing safe appliances for its workmen; that the plaintiff was not required to show the particular cause of the accident, it being sufficient for him to produce evidence of defects in the construction of the steam main which with the evidence of its breaking would warrant the inference by the jury that the accident was due to the negligence of the defendant; and that the case properly was submitted to the jury.

In an action by a workman against his employer for personal injuries alleged to have been caused by the failure of the defendant to provide safe appliances for the plaintiff's use, the plaintiff is not required to show the particular cause of the accident, and is entitled to go to the jury upon evidence of defects in the construction of the defendant's appliances which together with the happening of the accident would justify the jury in inferring that the plaintiff's injuries were due to the negligence of the defendant.

In an action by a workman against his employer for personal injuries from the bursting of a cast iron header to a boiler forming part of the steam main of the defendant's power plant, in which one question at issue is whether the material selected by the defendant for the pipe should not have been wrought iron instead of cast iron, it is competent for the plaintiff to show by an expert having special knowledge of the subject matter that in his opinion the best form and quality of cast iron is unsuitable for a pipe of this character on account of its brittleness under the temperature to which it is likely to be subjected.

In an action by a workman against his employer for personal injuries from the bursting of a cast iron header to a boiler forming part of the steam main of the defendant's power plant, the presiding judge excluded the following question addressed by the defendant to its master mechanic: "Is it customary in the well conducted concerns with which you are familiar, to adopt a hydraulic test or

a hammer test on a steam line of substantially this description, after it has been installed and in operation ? " The ground of the exclusion did not appear. *Held*, that, whether the question was excluded on the ground that the experience of the witness with other plants was not wide enough to make his testimony of any value or on the ground that the inquiry was immaterial or that the nature of the information sought was too remote from the issue on trial, the exclusion was within the discretion of the presiding judge.

THREE ACTIONS OF TORT for personal injuries suffered severally by three servants of the defendant through the bursting of a steam pipe or header connected with one of the boilers in the power plant of the defendant at Worcester. Writs dated respectively October 21, December 16 and November 22, 1904.

Annie M. Johnson, the plaintiff in the second case, was the widow of Alfred Johnson, one of the injured workmen, who died six days after the accident, and the administratrix of his estate.

In the Superior Court the cases were tried together before *Pierce*, J. In each case notice of the time, place and cause of the injury had been given to the defendant in accordance with the requirements of the employers' liability act. It appeared that at about twenty minutes after five on the afternoon of September 13, 1904, the plaintiff's intestate in the second case and the plaintiffs in the other cases were employed by the defendant and were at work in a room in building No. 12 at the North Works of the defendant in Worcester; that this building was a few feet distant from the boiler house of the defendant and was a separate building; that there came a noise and a rush of steam into the room where they were at work which scalded and injured seven persons, more or less severely, three of whom were the plaintiff's intestate in the second case and the plaintiffs in the other cases; that the steam came from the bursting of a cast iron header or steam pipe eight feet long and fourteen inches in diameter connected with boiler No. 13 in the defendant's power plant; that this header was one of seventeen similar headers, each connected with a boiler and constituting the defendant's power plant; and that the headers were bolted together so as to form one continuous line of pipe. The evidence is described in the opinion.

At the close of the evidence the defendant asked the judge in each of the three cases to rule that upon all the evidence the

plaintiff could not recover and to order a verdict for the defendant. In each case the judge refused to rule as requested and submitted the cases to the jury in a charge which was not excepted to by either party in any of the cases. The jury returned verdicts for the plaintiffs, in the first case in the sum of $3,000, in the second case in the sum of $5,000, and in the third case in the sum of $2,500. The defendant in each case alleged exceptions to the refusal to rule as requested and also to the admission of certain evidence and the exclusion of certain other evidence as described in the opinion.

*F. F. Dresser,* for the defendant.

*W. Thayer,* (*C. B. Perry & V. E. Runo* with him,) for the plaintiffs.

RUGG, J.    The fundamental question in these cases is, whether the defendant was negligent in the construction and maintenance of its steam power plant.    The plaintiffs in the first and third cases and the plaintiff's intestate in the second case were employees of the defendant working in a room adjoining the boiler room, in which a steam main burst, causing their injuries.    Seventeen horizontal boilers were placed side by side in the boiler room. The steam main connecting with the boilers, including an expansion pipe on the end, was about one hundred forty-five feet long, with an inside diameter of fourteen inches and a thickness of one and one eighth inches to one and one fourth inches.    The steam main was composed, outside of the expansion pipe, of seventeen headers, so called, made of cast iron, one for every boiler, each eight feet long with flanges on both ends, so that they could be bolted together, thus making a continuous steam main or pipe. Out of the lower side of each and connecting with it by a nozzle or T shaped piece, coming out of and forming a part of the header, was a six inch wrought iron pipe which, after making an angle, entered vertically its boiler.    The dimensions of these headers were sufficient, if of cast iron without flaw or defect, to sustain a steam pressure of one hundred twenty-five to one hundred fifty pounds to the square inch, with a factor of safety of twenty-one, which means that it would carry a pressure twenty-one times as great before breaking.

The line of headers which constituted the steam main was supported on brackets attached to brick piers.    The headers

rested on rollers on the brackets, which permitted the steam main to move back and forth lengthwise on them, as it expanded with the heat. The expansion of the entire length was about three inches.

Between boilers ten and eleven there was a blank flange or cut-off so that boilers one to ten could be run at one pressure and eleven to seventeen at another pressure, and they were being so run at the time of the accident, although when the plant was first installed in 1896, the boilers which were first put in use were all run at the same pressure.

At the time of the accident, boilers one to ten were carrying one hundred fifty pounds of steam pressure and those numbered eleven to seventeen one hundred twenty-six pounds pressure. At the high pressure end the main was anchored through a brick wall with a nut and rod so that it could be tightened and stop the vibration. When tightened, it could not expand over half an inch at that end. At the other end of the steam main was a gooseneck, so called, which was a ten inch pipe sloping downward from the main for a considerable distance and then up again in another part of the building. This device permitted expansion at that end. There was no drip cock upon this gooseneck, but an elbow, designed to take return water and condensed steam back to the boilers. Upon the main steam line there was no expansion valve and there were no drip cocks.

The headers were purchased by the defendant at a reputable foundry, where they were tested, but the machine work upon the castings was done at the defendant's shop and the steam main was put together and in place with its connections to the boilers by the defendant's employees, and according to a design, both as to construction and connections, made by the defendant's engineer. It was examined during construction by one Allen, who was a steam engineering inspector of wide experience, and in part was tested by him; and he approved it in most, if not all, respects. The defendant applied to the headers and the steam main the usual tests before the plant was put in use and made the customary inspection while the plant was in operation.

On the day of the accident, the header of boiler thirteen blew

out on the back side opposite where the steam went in, leaving the main pipe in place and blowing out a space eighteen or twenty inches in length.

Examination showed that at the place of the break, the cast iron was spongy, stogy or porous, but this condition was concealed by a skin of good iron on the outside one sixteenth to one eighth of an inch in thickness and on the inside one fourth to one half an inch in thickness. The porous part did not show on the inside or outside of the pipe. At the defective place the good iron was between one fourth and one half an inch thick which should bear over one thousand pounds pressure of steam.

There was evidence from several of the witnesses, whose familiarity with the construction and operation of steam plants was not in question, that the plan of this steam pipe line with its boiler connections and anchorage was defective. The professor of steam engineering at the Worcester Polytechnic Institute testified that it was not a mechanically proper construction, because sufficient arrangements were not provided for the expansion of the steam main, whereby there would be a tendency to weaken the joints throughout the length of the pipe, and that drip cocks along the line of the pipe were necessary, although none were provided, and that cast iron was an unsuitable material of which to make the headers, because of its brittleness or rigidity, and that the method of connecting the feed pipes from the boilers to the main was improper. This testimony was supplemented in important particulars by another witness of acknowledged experience. The defendant invokes the rule applied in *Fuller* v. *New York, New Haven, & Hartford Railroad*, 175 Mass. 424, to the effect that it had performed its whole duty when it purchased the castings, out of which the main steam pipe was made, from a reputable manufacturer. One of these castings proved to be to some extent defective by reason of spongy metal, but this defective material was covered on both sides by good metal of a thickness sufficient, upon the undisputed evidence, to withstand a steam pressure of one thousand pounds, while it was being subjected at the time of the accident to only one hundred fifty pounds pressure. This evidence strongly points to some other cause for the accident than the defective casting. But this rule has no application to the facts here

disclosed, for the reason that the castings after being so purchased were finished by the defendant and were incorporated into a structure according to a design prepared by its own engineer, which, apart from any hidden defect in the castings, was asserted by the plaintiffs to have been defective in important particulars, which could have caused the break complained of.

The defendant stoutly contends that the employment of Allen to inspect the construction and his approval of it as a competent expert in such matters exonerates it from culpability.  The defendant undertook, through its own agents, to design, manufacture and install its steam main and boiler connections.  The castings for the headings, so far as appears, were the only materials purchased of other manufacturers.  The defendant itself thus assumed to perform its general obligation of using proper care to provide safe machinery, appliances and apparatus for its servants to work with.  It cannot relieve itself from this responsibility by showing that it employed competent engineers to design and set up the appliances in question, or to inspect them after being in place.  This is weighty evidence as tending to show that it took all the precaution which ordinary prudence required.  *Shrewsbury* v. *Smith*, 12 Cush. 177.  But the defendant must still bear its original responsibility of using due care to provide safe appliances.  If there is any neglect on the part of the designing engineer, the principal is responsible for it. *Moynihan* v. *Hills Co.* 146 Mass. 586.   *Hooe* v. *Boston & Northern Street Railway*, 187 Mass. 67.

If it be conceded for the moment that for the use of cast iron as the material for the steam main the defendant might not be liable because it was a material in common, though not exclusive, use, there is nevertheless evidence from which the jury might have inferred that the accident was occasioned by failure to provide a sufficient number of drip cocks or drains along the steam main, or by the anchorage of the main in such a way as to hamper its expansion and perhaps by other causes.  The weight to be given to the evidence is not now to be determined. It is only for us to say whether there was sufficient evidence to support a verdict in favor of the plaintiffs upon any of the counts. The plaintiffs were not required to show the particular cause of the accident.  It was enough to proffer evidence of defects in

the construction of the steam main, which, coupled with its breaking, might warrant the jury in inferring that the accident was due to the negligence of the defendant. *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196.

Two questions of evidence are raised by the defendant. One Reeve, duly qualified as having special knowledge respecting the subject matter, testified, against the defendant's exception, that the very best form and quality of cast iron was unsuitable for a pipe of this character, in his opinion, because of its brittleness under the temperature to which it was likely to be subjected. One question at issue was whether the material selected by the defendant for the pipe should not have been wrought iron instead of cast iron. It was the duty of the defendant to furnish reasonably safe and suitable appliances, so that they would not be likely to break and injure its employees. *Littlefield* v. *Allis Co.* 177 Mass. 151. It was competent for the plaintiffs to proffer the opinion of an experienced witness as to whether there were unusual risks in the use of cast iron in the particular place where it was installed by the defendant, and whether the accident which occurred resulted from such use. *Chalmers* v. *Whitmore Manuf. Co.* 164 Mass. 532. *Arnold* v. *Harrington Cutlery Co.* 189 Mass. 547. The testimony objected to was directed toward this end.

The defendant asked one Smith, its master mechanic, "Is it customary in the well conducted concerns with which you are familiar, to adopt a hydraulic test or a hammer test on a steam line of substantially this description, after it has been installed and in operation?" This question was excluded. The ground of the exclusion does not appear, but it may well have been that the judge decided that the witness's experience with other plants was not wide enough to make his testimony of any value. Moreover, the materiality of the inquiry does not clearly appear and at best the nature of the information sought was somewhat remote from the issue to be passed upon. The ruling must be sustained as being within the discretion of the presiding judge. *Dolan* v. *Boott Cotton Mills*, 185 Mass. 576.

*Exceptions overruled.*