Rosa Lamberti, administratrix, vs. Enoch E. Neal.

Middlesex.    March 17, 1925. — June 26, 1925.

Present: Rugg, C.J., Pierce, Carroll, Wait, & Sanderson, JJ.

*Negligence*, Employer's liability, In use of electricity. *Evidence*, Presumptions and burden of proof, Relevancy and materiality, Competency. *Practice, Civil*, Exceptions.

At the trial of an action by an administratrix to recover for the causing of death of her intestate, an employee of the defendant, through alleged negligence of an employee of the defendant entrusted with and exercising superintendence or by reason of a defect in the ways, works and machinery of the defendant, there was evidence tending to show that the intestate just before his death was standing on moist coal, which was a good "ground," beside a metal chute and was receiving coal brought to the chute by a metal conveyor physically connected with it and operated by a portable electric motor on a current of from five hundred and seventy to five hundred and eighty volts without a safety ground wire; that, while so standing, the plaintiff fell over on the chute and died instantly; that his death was caused by an electric shock; that the defendant's foreman in the defendant's absence had been told of previous shocks received by employees and that at the same time when the plaintiff's intestate fell another employee had received a shock when the foreman attached the chute to the conveyor; that a safety ground wire was the only way of making such a portable motor safe; that a current of five hundred and fifty volts was dangerous; and that the motor might have been operated with a current of one hundred and ten volts, which could have been procured and which would have made the machine safe. *Held*, that
(1) A finding of negligence in not discovering the dangerous condition of the machine and making it safe was warranted;
(2) The words "defect in the condition of the . . . machinery" in the employers' liability act did not refer to the working capacity of the machinery but to its condition with regard to the safety of the employee;
(3) Such defect might be the want of a safety device or appliance;
(4) The plaintiff was not bound to prove a specific defect or a specific act of negligence in order to recover: it was enough if she showed facts from which negligence might be inferred;
(5) The rule, applicable to all obvious conditions and dangers which should be observed and appreciated, that an employee assumes such risks of the business in which he is employed and his employer is not bound to change his structures to make them safe for the employee or to use the most improved machinery, was not applicable in the circumstances, since the defects relied on by the plaintiff were not obvious;

(6) The facts, that the motor was plainly marked five hundred and fifty volts and that a person could see that no wire connected its frame with the ground, did not make the risk of receiving a fatal electric current through the coal chute an obvious one;

(7) The mere fact that the defendant purchased the machine from a reputable dealer did not as a matter of law require a finding that he had done his full duty toward the plaintiff's intestate;

(8) If, as the jury might have found, the defendant set the intestate to work on or near a machine with the concealed danger of its becoming charged with a current of electricity which, in the exercise of reasonable care, ought to have been made safe, it was no defence for him to show that the same kind of machines were commonly used in similar work;

(9) The defendant could not as a matter of law free himself from responsibility for the discharge of his personal duty merely by showing that he complied with the requirements of a municipal inspector of wires or engaged competent engineers to design and competent electricians to install the wires and apparatus properly; nor by proving that he followed their advice and adopted their methods and did the work as recommended by them with the approval of the inspector of wires; nor by proving that he had no knowledge that a safety ground wire would be an additional protection; nor by delegating the performance of this duty to another, whether in his service or not;

(10) Evidence relating to a safety ground wire and a transformer to reduce the voltage of the motor properly was admitted.

TORT, with the declaration described in the opinion, for the causing of the death of Dominic Lamberti, an employee of the defendant. Writ dated January 10, 1920.

In the Superior Court, the action was tried before *Dubuque*, J. Material evidence is described in the opinion.

At the close of the evidence, the defendant asked for the following rulings:

"11. That the plaintiff cannot recover unless she proves by a fair preponderance of the evidence some specific act of negligence on the part of the defendant or of some person in his employ charged with the duty of superintendence.

"12. That the rule or doctrine of *res ipsa loquitur* does not apply to the case at bar and that the plaintiff cannot recover by virtue thereof and that unless competent affirmative evidence is submitted by the plaintiff warrants a legitimate inference of negligence on the part of the defendant or of some person in his employ.

"13. That the plaintiff cannot recover if the jury find that the only specific defect was a defect in the electric line circuit

of the Malden Electric Company or in the premises of some other customer whose lines are attached thereto.

"14. That the plaintiff cannot recover on account of any defect in the electric lines of the Malden Electric Company or of any other person if such defect was beyond the wires, machinery, ways and works of the defendant himself."

"18. That if the defendant in installing his wire system at his coal yard in Malden and in installing and putting in commission the coal conveyor in said yard used and adopted such methods as met with the approval of the inspector of wires and that the work of installation, etc., was performed by competent electricians who were not restricted by the defendant but expected and required to install said wires and apparatus and said coal conveyor properly, then and in that case the absence of a safety ground wire is not evidence of negligence on the part of the defendant.

"19. That if the defendant in installing the electric wiring apparatus and a coal conveyor in his coal yard sought and obtained the advice of competent electricians whose advice was followed and the methods adopted were the methods recommended by said competent electricians and the work of installation and putting in commission as aforesaid was properly and reasonably done and when completed met with the approval and was in fact approved by the inspector of wires, then and in that event the absence of a safety ground wire for said coal conveyor is not negligence on the part of the defendant.

"20. That if in the installation of the electric system and the putting in commission of said coal conveyor by the defendant in his coal yard at Malden he sought and adopted the advice of competent electricians whose recommendations were fully and properly followed and the defendant had up to and including July 28, 1919, no knowledge of the fact that a safety ground wire for said coal conveyor would be an additional protection, then and in that event the absence of a safety ground wire for said coal conveyor would not be evidence of negligence on the part of the defendant."

"22. That if electricity was not turned on to said coal conveyor at the time of said injury to Dominic Lamberti, the verdict must be for the defendant."

"24. That the plaintiff cannot recover on the ground that the defendant's coal conveyor was not equipped with a 'safety ground' wire.

"25. That the defendant had the right to carry on his business in his own way although the machinery and appliances in use might be improved and a safer method adopted and that the defendant owed no legal duty to Dominic Lamberti to change the conditions or to make them safer, even if they could be found to constitute defects."

"28. That the contractors employed by the defendant to install the defendant's electric system and the coal conveyor and appliances thereto attached were not persons 'in the service' of the defendant within the meaning of the employers' liability act and that therefore the defendant cannot be held liable in this case for or on account of any negligence or error of judgment in relation to the installation of said electric system, said coal conveyor and the appliances thereto attached."

"34. That if the defendant in installing said electric lines, said coal conveyor and the appliances thereto attached or used in connection therewith, complied with the general practice relative thereto, he was not guilty of negligence and the plaintiff cannot recover in this action even though there might be some safer method of installation."

"38. That if a five hundred and fifty volt motor such as the defendant used was a standard motor for the class of work carried on by the defendant and was the one in common use for such work, the defendant cannot be held liable in this action because a motor with less voltage could have performed the work required."

Instructions given by the trial judge relating to the subject matter of the requests numbered 12, 13, and 14 are described in the opinion. The other requests were refused. There was a verdict for the plaintiff in the sum of $4,000. The defendant alleged exceptions.

*H. L. Boutwell,* (*F. A. Cross* with him,) for the defendant.
*P. M. Foss,* for the plaintiff.

SANDERSON, J. In this action the plaintiff seeks to recover damages for the death, without conscious suffering, of her husband, Dominic Lamberti, on July 28, 1919, while

employed as a laborer in the defendant's coal yard in Malden. The declaration is in two counts, both for the same cause of action: the first alleging, in substance, that Lamberti was killed by reason of a defect in the condition of the ways, works or machinery, arising from or not remedied in consequence of the negligence of the defendant or of a person in his service entrusted with the duty of seeing that they were in proper condition; and the second alleging that the death was caused by the negligence of a person in the service of the defendant who was exercising superintendence. The defendant's answer is a general denial. The jury returned a verdict for the plaintiff and the case is before us on the defendant's exceptions to the admission of evidence and to rulings given and refused by the trial judge.

On the date of his death Lamberti was assisting in unloading a coal car, using for the purpose a conveyor, with an endless belt supported by a metal framework operated by an electric motor mounted on an iron truck. The coal was carried upward from the car, and at the delivery end of the machine were two sheet iron chutes through which it was delivered to a pile in the defendant's shed. These chutes were metallically connected with the conveyor. The electric current came from the Malden Electric Company, and was furnished to the defendant from the street supply, by means of a cable with terminal attachment designed for plugging into outlets in various parts of the defendant's plant. The main feed wire came from the Malden Electric Company and carried a current of twenty-three hundred volts, which was transformed, a few hundred feet from the defendant's coal shed, to a secondary circuit carrying approximately five hundred and fifty volts, and from the point of transformation the current was distributed on the same secondary circuit to the defendant, the Malden Knitting Mills, and others. On the day of the accident, this circuit was actually carrying from five hundred and seventy to five hundred and eighty volts. It was owned and maintained by the electric company, and the testimony was undisputed that the company's responsibility ended at the service connection in the defendant's coal yard. The wires and cables carrying the current

within the defendant's plant had been installed for him by competent electricians, authorized and directed to install them in a proper and safe manner. The conveyor was modern, having been put into commission in November, 1918; the motor was of high grade, standard make, and was controlled by an iron switch metallically connected with the framework of the conveyor, so that if the framework was charged with electricity a person putting his hand upon the switch would receive a shock. The jury could have found that there was moisture in the coal where Lamberti stood; that "a moisture ground" could pass a fatal current; and that a current with a voltage of five hundred and fifty is dangerous to human life.

The defendant was absent from the Commonwealth at the time of the accident. Testimony was introduced tending to prove that before that time complaints of slight shocks from the machine had been made to the defendant's foreman; that just before Lamberti died a fellow workman was standing at the discharging end of the coal chute shovelling coal, with one hand on the iron part of the shovel, and received a shock of electricity through the chute when the current was turned on by the foreman, who was at the switch using a stick for the purpose; that at the same time Lamberti cried out, falling forward across the chute; that the current was then shut off, and Lamberti rolled off the chute unconscious and did not thereafter show signs of consciousness. Tests made soon after the accident disclosed a leakage of electricity to the frame of the conveyor which should not have existed, and the same condition was found the day after the accident. The discovery was also made that one wire of the secondary circuit was grounded by contact with a metallic pipe at the Malden Knitting Mills. This was a serious matter, demanding immediate attention, and was repaired the afternoon of July 28, or the next morning.

The plaintiff contended that the defendant was negligent in setting her intestate to work at or near a coal conveyor which had concealed defects dangerous to human life; and she introduced evidence tending to prove that in either one of two ways this condition might have been remedied and

the accident avoided, namely, (1) by the installation of a safety ground wire, or (2) by the reduction of the voltage of the electric current. Many of the defendant's exceptions relate to these two matters.

A safety ground wire is one making a direct connection between the framework on which the motor sets and the ground, whereby any leakage of electricity from the motor or wires to the framework is carried into the ground, thus preventing shock to a person coming in contact with the machine. There was no such wire attached to this machine. It appeared in evidence that the practice for many years had been to equip stationary motors with wires of this kind; but there was testimony tending to prove that at the time of the accident no good way of attaching them to portable motors was known, that they were not in general use, and that it was common practice to use a five hundred and fifty volt motor for coal conveyors. Upon conflicting evidence it could have been found that such wires could and should have been attached to the defendant's motor, and that in no other way could a portable five hundred and fifty volt machine be made safe. Testimony also was introduced from which the jury might have found that a five hundred and fifty volt motor could not be safely installed on a portable machine; that a current of one hundred and ten or two hundred and twenty volts would do the defendant's work as effectively as one of higher voltage; that this lower voltage could be obtained by the installation of a transformer in the defendant's plant to reduce the current; and that if such lower voltage had been used the machine would have been safe.

As was said in *O'Donnell* v. *Boston Elevated Railway*, 205 Mass. 200, 202, ". . . electricity is a highly dangerous servant, and the defendant employing . . . [it] for its own purposes is properly held to a correspondingly high degree of care in its use." The evidence tending to prove that the defendant's foreman knew before the accident of complaints that employees were getting electric shocks from the coal conveyor would justify the jury in finding that the defendant was negligent in not discovering the dangerous condition and

making it safe. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407. The words "defect in the condition of the . . . machinery" in the employers' liability act, St. 1887, c. 270, § 1, cl. 1, do not refer to the working capacity of the machinery but to its condition with regard to the safety of the employees. When the statute speaks of a defect not having been remedied, it does not mean that the machine must have been made perfect for working purposes, but that its dangerous condition must have been ended. *Willey* v. *Boston Electric Light Co.* 168 Mass. 40. The defect may be the want of a safety device or appliance. *Myers* v. *Hudson Iron Co.* 150 Mass. 125.

The plaintiff was not bound to prove a specific defect or a specific act of negligence to entitle her to recover. It is enough if she shows facts from which negligence may be inferred. *Erickson* v. *American Steel & Wire Co.* 193 Mass. 119, 123. *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196, 202.

The rule that an employee assumes the risks of the business and the employer is not bound to change his structure to make it safer for the employee or to use the most improved machinery, applies to all obvious conditions and dangers which should be observed and appreciated. *Mutter* v. *Lawrence Manuf. Co.* 195 Mass. 517. *McKenna* v. *Gould Wire Cord Co.* 197 Mass. 406. *Rivers* v. *Richards,* 213 Mass. 515. But this rule does not protect the employer if he has failed to exercise reasonable care to discover and remedy defects that are not obvious in the condition of the ways, works and machinery. The facts that the motor was plainly marked five hundred and fifty volts and that a person could see that no wire connected its frame with the ground did not make the risk of receiving a fatal electric current through the coal chute an obvious one.

The defence that the machine was purchased from a reputable manufacturer does not show that the defendant has done his whole duty, when it appears that he has incorporated it into his structure in accordance with the plan of his engineer and the dangerous condition complained of is in not attaching adequate safety devices or installing a transformer

to reduce the current to a lower voltage, or in other ways making it reasonably safe. *Erickson* v. *American Steel & Wire Co., supra.* It is not contended that there was any defect in the conveyor as purchased from the manufacturers, and cases like *Roughan* v. *Boston & Lockport Block Co.* 161 Mass. 24, *Reynolds* v. *Merchants' Woolen Co.* 168 Mass. 501, *Fuller* v. *New York, New Haven & Hartford Railroad,* 175 Mass. 424, do not apply.

The jury were instructed, in substance, that a defendant is not bound to provide for his employees the latest and safest appliances or any particular machine, even if it would be more suitable and less dangerous, in case the one provided is fit and proper. *Wolfe* v. *New Bedford Cordage Co.* 189 Mass. 591, 592. If, however, he sets his employees to work on or near a machine with the concealed danger of its becoming charged with a current of electricity which, in the exercise of reasonable care, he ought to have made safe, it is not a defence for him to show that the same kind of machines are commonly used in work similar to his. *Hill* v. *Winsor,* 118 Mass. 251. *Wilson* v. *Alexander,* 230 Mass. 242. This is true even though the machine itself be perfect in mechanism, if it is found to be unsuitable and unsafe and if the defendant knew this or in the exercise of reasonable care should have known it. *Wilson* v. *Alexander, supra.*

In the case at bar it might be found that the duty of using reasonable care, to see that the coal conveyor and motor were so erected, protected, and maintained that they would not carry a fatal electric current to an employee working near them in the ordinary and expected way, was one which rested on the employer himself; and he cannot free himself from responsibility for the discharge of his personal duty, by showing that he complied with the requirements of the Malden inspector of wires or engaged competent engineers to design and competent electricians to install the wires and apparatus properly; nor by proving that he followed their advice and adopted their methods and did the work as recommended by them with the approval of the inspector of wires; nor by proving that he had no knowledge that a safety ground wire would be an additional protection; nor by dele-

gating the performance of this duty to another, whether in his service or not. *Erickson* v. *American Steel & Wire Co.*, *supra*. *Chisholm* v. *New England Telephone & Telegraph Co.* 185 Mass. 82. *McMahon* v. *McHale*, 174 Mass. 320. *Myers* v. *Hudson Iron Co.*, *supra*. *Kirk* v. *Sturdy*, 187 Mass. 87.

On the issue whether the defendant has used reasonable care to furnish safe machinery, the plaintiff was within her rights in introducing the evidence relating to a safety ground wire and a transformer to reduce the voltage of the motor. *McMahon* v. *McHale, supra.* The jury were instructed in substance that the plaintiff could not recover unless she proved that her husband died from an electric shock resulting from negligence for which the defendant was responsible; and they must have understood that if the current were not turned on the verdict would be for the defendant. For the reasons stated, the requests numbered eleven, eighteen, nineteen, twenty, twenty-two, twenty-four, twenty-five, twenty-eight, thirty-four and thirty-eight, were properly refused; and for the same reasons the exceptions saved to the testimony of the plaintiff's electrical expert, Puffer, and to the testimony of another witness called by the plaintiff, relating to the installation and function of a safety ground wire and of a stepdown transformer to reduce the voltage of the current, must be overruled. A witness called by the defendant testified in cross-examination, without objection, that in his opinion there should have been a safety ground wire on the defendant's coal conveyor at the time of the accident and that a hundred and ten volt motor could be used on that conveyor to do the defendant's work.

The defendant asked the trial judge to rule that the doctrine of *res ipsa loquitur* does not apply to the case at bar, and that the plaintiff cannot recover by virtue thereof unless competent affirmative evidence is submitted to warrant a legitimate inference of negligence on the part of the defendant or of some person in his employ. The defendant contended that the mere fact that Lamberti fell over the coal chute and died is not evidence of death from an electric shock. The judge clearly left the issue of the cause of death to the

jury to decide upon the whole evidence, a part of which was the testimony as to the previous sound physical condition of the deceased, the opinion of a physician that death was caused by an electric shock, and the evidence that a fellow employee got a shock through the coal chute at the time Lamberti met his death. The judge also submitted to the jury the question whether the defendant was negligent in not equipping the frame of the motor with safety ground wire or in not installing a transformer to reduce the current to a lower voltage or in not discovering and remedying the cause of electric shocks previously received by employees; and instructed them in substance that if Lamberti died of an electric shock this did not in and of itself independently of any other fact prove negligence, but that the fact of his death by electricity, if that were a fact, might be considered with the other evidence on the question of the defendant's negligence. The plaintiff placed the ground of her recovery on special causes and did not rely on the mere happening of the accident to prove negligence and the case was so submitted to the jury. *Cook* v. *Newhall,* 213 Mass. 392. This request was given in substance and the charge concerning it was sufficiently favorable to the defendant.

The request to the effect that there could be no recovery if the only specific defect was in the circuit of the Malden Electric Company or in the premises of its customers other than the defendant, and that there can be no recovery for any defect beyond the wires, machinery, ways and works of the defendant, could not have been given. Upon the testimony the jury could have found that the employer had the duty of installing a safety ground wire to guard employees against the danger of receiving an electric shock from the accidental escape of electricity, whether due to a defect in the defendant's premises or outside. The charge made it clear that there could be no recovery unless there was a defect in the condition of the ways, works and machinery of the defendant in his plant for which he was responsible.

The exceptions to the admission of the electric code must be overruled: the evidence was afterwards stricken out and it is to be presumed that the jury disregarded it. *Todd* v.

*Boston Elevated Railway,* 208 Mass. 505. The qualifying words in the order of exclusion, to the effect that it was without prejudice to the right of experts to refer to the code as the basis for an opinion, gave the defendant no good exception. The code properly might be used for the limited purpose stated. *Finnegan* v. *Fall River Gas Works Co.* 159 Mass. 311. It did not appear, however, that it was so used. One witness referred to it but testified to his own opinion, and it was not in evidence that he based that opinion on the information contained in the code.

All exceptions argued have been considered and no reversible error is discovered.

*Exceptions overruled.*