SOBHY E. MABARDY *vs.* ROCCO V. CAMPO & others (and a companion case[1]).

Suffolk.     February 6, 1962. — June 4, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Negligence,* Falling object, Chute.     *Landlord and Tenant,* Tenant's liability to third person, Landlord's liability to third person.

In an action by a truck driver who was in a building as an invitee of the defendants, tenants on the third floor, and who, while on his truck as it was being loaded on the first floor with sawdust removed from the defendants' premises and dropped from the third floor through a temporary chute "rigged up" by them down a well to the first floor, was injured when he was struck by a metal furniture clamp of the type used to fasten the chute to a balcony on the third floor, evidence warranted findings that the clamp which struck him belonged to the defendants, that they were negligent in the erection or in the maintenance of the chute, and that they were liable to the plaintiff, even though other tenants on the third floor of the building made use of a passageway adjoining the well and there was no direct evidence of the circumstances of the accident. [462]

A finding that the landlord of a building was in control of a temporary chute "rigged up" by tenants of premises on the third floor from that floor down a well to the first floor for their own convenience in removing sawdust and available solely for their use was not warranted by the evidence in an action against the landlord by a truck driver who was

---

[1] The companion case is by the same plaintiff against Anthony Alving & others.

in the building at the invitation of the tenants and who, while loading his truck with sawdust on the first floor, was injured when struck by a metal furniture clamp of the type used to fasten the chute on the third floor, even if the landlord instructed the plaintiff "where to put his truck in the well"; and the plaintiff could not recover. [462]

TWO ACTIONS OF TORT. Writs in the Superior Court dated March 26, 1958.

The actions were tried together before *Goldberg, J.*

*Charles W. Barrett, Jr.* for the defendants Rocco V. Campo & others.

*Elliot E. Rosenberg* for the plaintiff.

*James D. Casey* for the defendants Anthony Alving & others.

SPALDING, J. These are two actions of tort. In one, the plaintiff seeks to recover against R. V. Campo, V. Campo, and Joseph Civiello, doing business as Pilgrim Furniture Mfg. Co., hereinafter called the tenants. In the other, recovery is sought against Anthony Alving, Nathan Rozen, and Arthur J. McGonagle, hereinafter called the landlords.

The evidence was as follows: The landlords were the owners of a building located at 16 Harcourt Street, Boston. The tenants occupied a portion of the third floor of that building. For approximately ten years the plaintiff had from time to time come to 16 Harcourt Street, at the tenants' request, for the purpose of removing sawdust from their premises. The first floor of the building was used as a garage for motor vehicles. Access to the third floor was by means of a stairway or by elevator. The usual method of removing sawdust was for the plaintiff to drive his truck through the garage onto the elevator, which would lift the truck to the third floor where it would be loaded. But on the date of the accident, and "not less than 10 days and perhaps more prior thereto," the elevator was inoperative. While the elevator was being repaired, the tenants "rigged up" a temporary chute from a third floor balcony down a well to the first floor so that sawdust could be dropped from the third to the first floor. The chute consisted of "a wooden box open at [the] top and bottom, from which hung a canvas tube. The four corners of the box, two top and

two bottom, were placed against the outer side of the railing edging the balcony and four metal furniture clamps of a type normally used by . . . [the tenants] in . . . [their] business were used to hold the box to the railing . . . . The clamps were of a type which were hand tightened by a screw device. A long piece of rope was then passed around the box and tied to the four clamps so that if one loosened it would not fall.'' J. V. Campo, an employee of the tenants, testified "that he made sure that the ropes were well tied, and the clamps were well tightened. The box and chute were in position for at least a week and the witness used to check it and its fastenings. He did not do so on the day of the accident, or for some days before.'' Other tenants on the third floor made use of the passageway adjoining the well.

On the day of the accident, the plaintiff, at the request of J. V. Campo, came to 16 Harcourt Street and was told by Campo to drive his truck into the well under the chute. ''He went back to his truck and was instructed by a Mr. McGonagle where to put his truck in the well.'' While the sawdust was being loaded onto the truck, the plaintiff was discovered ''unconscious on the sawdust in his truck bleeding from a head wound and lying beside him in the truck [was] a furniture clamp of the type used to fasten the box above.'' After the accident J. V. Campo ''went up to the third floor, looked at the box and chute; . . . one of the four clamps was missing, and 'there was no ropes on when I went out there. They had been taken off for some reason or another . . . . I don't know who took them off or why they were taken off.' ''

At the close of the plaintiff's case the tenants and the landlords rested. Each group of defendants moved for a directed verdict. Both motions were denied and the jury returned verdicts for the plaintiff against both the tenants and the landlords. The verdict against the landlords was recorded under leave reserved, and thereafter the judge entered a verdict in their favor. The cases come here on the plaintiff's exceptions to this action, and on the tenants' exceptions to the denial of their motion for a directed verdict.

1. We are of opinion that the judge properly denied the motion for a directed verdict in the action against the tenants. The plaintiff was a business invitee of the tenants and as such was owed a duty of reasonable care. While there was no direct evidence of the circumstances of the accident, the evidence was sufficient to take the case outside the realm of guesswork. The testimony was such that the jury could infer that the clamp which struck the plaintiff belonged to the tenants and that they were negligent either in the erection of the temporary chute or in its maintenance. See *Lowner* v. *New York, N. H. & H. R.R.* 175 Mass. 166; *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196, 202; *McNicholas* v. *New England Tel. & Tel. Co.* 196 Mass. 138, 141; *Fitchburg Gas & Elec. Light Co.* v. *Samuel Evans Constr. Co. Inc.* 338 Mass. 752, 754. The plaintiff was not required to show the particulars of the tenants' negligence; it was enough if he showed facts from which negligence might properly be inferred. True, as the tenants suggest, it is possible that the falling of the clamp may have been due to the conduct of someone other than the tenants. But we are of opinion that it could have been found that negligence on the part of the tenants was the more likely cause of the accident.

2. As to the liability of the landlords, the plaintiff admits "that there was no direct evidence concerning the terms of the tenancy, or the extent of control in the landlords." Nor do we believe that control in the landlords could reasonably be inferred. The temporary chute was erected by the tenants for their own convenience; it was available solely for their use. There was no evidence that the landlords had any notice of the defective condition of the chute. The fact that "a Mr. McGonagle," even assuming he was one of the landlords, directed the plaintiff to place his truck under the chute is not evidence of control over the defective chute. It follows that a verdict was properly entered for these defendants. See *Schopen* v. *Rando,* 343 Mass. 529, 531–532, and cases cited.

3. The exceptions in both cases must be overruled.

*So ordered.*