## FRANK GAGNON *vs.* SEACONNET MILLS.

Bristol.    October 29, 30, 1895. — February 25, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — " Ways " — Assumption of Risk — Negligence — Due Care — Law and Fact.*

If, at the trial of an action under the employers' liability act, St. 1887, c. 270, there is evidence tending to show that the defendant's superintendent was negligent in other matters than suffering a road on the defendant's premises where the plaintiff's injuries occurred to be defective, a general ruling that the plaintiff cannot recover will not be justified by the consideration that the road was not a part of the defendant's " ways," within the meaning of the statute ; and, if no request was made for particular instructions applicable to that question, it is not open to the defendant in this court.

In an action under the employers' liability act, St. 1887, c. 270, for personal injuries occasioned to the plaintiff by the falling upon him of a long square timber which was being hauled along a defective road on the defendant's premises on a low gear, with its narrower sides at the top and bottom, if the evidence tends to show that the timber was loaded upon the gear and moved under the personal direction of the defendant's superintendent, who was experienced in such matters, that, the timber beginning to tip up, he ordered the plaintiff and others to get upon it and hold it down, and that it was the plaintiff's first experience with the transportation of such a timber upon such a gear, the questions to what extent the plaintiff's experience of many years in farming, hauling stone, and logging made the danger to which compliance with the superintendent's order would subject him known and appreciated by him, whether he was in the exercise of ordinary care in obeying the order, and whether the superintendent was negligent in giving the order, are for the jury.

TORT, under the employers' liability act, St. 1887, c. 270, for personal injuries occasioned to the plaintiff by the falling upon him of a timber, while in the defendant's employ. The fourth count of the declaration, upon which the case was submitted to the jury, alleged that the plaintiff's " injury was caused by reason of the negligence of ·some person in the service of the defendant intrusted with and exercising superintendence, whose sole or principal duty was that of superintendence, whereby said timber was improperly and unsafely loaded and conveyed upon said gear, and the road or passageway along which said timber was conveyed was suffered to be and remain in a defective condition."

Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff's evidence tended to show the following facts. The plaintiff was employed by the defendant as a laborer on a new mill which it was building. The accident occurred from a timber, which was being hauled on a low gear by a pair of horses, rolling on the leg of the plaintiff, who was sitting on it to hold it down. The timber was loaded on the gear by the plaintiff and other servants of the defendant, under the personal direction of one Baker, who was the defendant's superintendent, in charge of the work and the men. Baker ordered a wooden roller to be placed on the end of the gear, and the timber to be loaded by being pushed over this roller. This was done, the timber resting with one end upon the floor of the forward part of the gear, its middle upon the roller, and about half its length projecting beyond the rear end of the gear. It was a squared timber, with two of its sides narrower than the other two, and as it rested upon the gear the two narrow sides were at the top and bottom. After it was loaded, Baker said it was all right, and, when asked by one of the men, "Are you going to leave that roller on?" replied, "Yes, it will only be killing time, for it will be under there already when you come to unload it." Then the team started, and after it had gone a little way one of the men said to Baker, "It will tip up," and he said, looking at the plaintiff and other workmen, "Get on to it, and hold it down." Whereupon the plaintiff and the others sat down on the timber, the plaintiff being at its forward end. The team then started again, and as it was going along the road one of the wheels struck a rock and was thrown into a hole in the road, whereupon the timber slid along the roller, canted over, and the plaintiff received the injuries complained of. At the place of the accident there was no room outside the track to drive, there being a sloping ledge on one side, and a lot of stones four or five inches from the track on the other. The plaintiff thought the timber was loaded all right. The plaintiff came from Maine to Fall River in 1893. In Maine he had run a farm for himself for about twenty years. He testified that he was not much accustomed to or much acquainted with the use of teams. He had used horses, oxen, and wagons on his farm, but not for carting timber. During

about half the winters he worked at logging, hauling logs on sleds from the woods, helping to load, fasten, and unload them. He fastened them with a chain so that they would not be jolted off. He had also chopped trees and helped to make roads. After he came to Fall River he worked on a farm for about two months, cutting bushes and sawing wood, and afterwards as a laborer, with a pick and shovel on a street railway. He went to work for the defendant at the new mill in August, 1894, and was first employed for about two weeks with a pick and shovel, and afterwards helped an ox-teamer drawing stones on a stone-boat or drag; also in drawing iron columns and timber to the mill with the oxen and a truck. This truck consisted of an axle and two wheels, the wheels being about two and a half feet apart. The columns and timbers were fixed lengthwise on this truck, and the plaintiff would walk behind the timber to steer it. He had thus carried about ten beams similar to the one by which he was hurt, and was using the truck about ten days in all, — seven days before the day of the accident, and over the road on which the accident happened. Although he had seen the low gear on which the accident occurred around the mill for a couple of days prior to the accident, he had never worked on it until he worked on the load which occasioned the accident.

David G. Baker, a witness for the defendant, testified that he was the superintendent of construction at the new mill which the defendant was building; that he had been a carpenter for forty years, and had been superintendent of construction of many mills; that he considered the method of loading the timber adopted in this case a safe and proper one; that he "had seen them put on hundreds of beams just in that way, and never knew one of them to tip up before"; that he did not superintend loading the timber which caused the accident; that he had told the men, among whom was the plaintiff, not to ride on the teams; that he was not present and did not tell him to get on the beam, as the plaintiff and his witnesses testified; that the road had been in use for nearly a month before the accident; that it was made for the purpose of carting material to the mill; that he did not notice this stone that came up five or six inches; and that "there would be places higher than the other where we filled it

up with small stone and earth; probably the earth would grind out and leave the stone; it would be uneven, — two or three inch hills."

At the close of the evidence the defendant requested the following rulings:

"1. Upon the whole evidence, the plaintiff is not entitled to recover. 2. The danger was obvious, and the plaintiff took the risk of the injury and the tipping of the beam, and cannot recover. 3. It was not negligence on Baker's part to leave the roll on the gear. 4. There is no evidence that the plaintiff was in the exercise of due care. 5. On the whole evidence, the plaintiff is not entitled to recover on the fourth count in his declaration."

The judge refused to give the rulings requested; and the defendant excepted.

The case was submitted to the jury, under instructions not excepted to, save in so far as they were inconsistent with the defendant's requests.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was argued at the bar in October, 1895, and afterwards was submitted on the briefs to all the judges.

*A. J. Jennings & J. M. Morton, Jr.*, for the defendant.

*J. W. Cummings*, (*E. Higginson* with him,) for the plaintiff.

BARKER, J. The verdict was rendered upon a count which alleged that the injury was caused by the negligence of the superintendent, whereby a timber was improperly and unsafely loaded and conveyed, and the road or passageway along which the timber was conveyed was suffered to be and remain in a defective condition. The case went to the jury under instructions not excepted to, save in so far as they were inconsistent with the defendant's requests, and the instructions given are not stated.

1. It is unnecessary to consider whether the place over which the timber was being transported was part of the defendant's " ways," within the meaning of St. 1887, c. 270, § 1. The only requests which can be construed to deal with that question are those that upon the whole evidence the plaintiff could not recover. As there was evidence tending to show that the superintendent

was negligent in other matters than in suffering the road to be defective, the general rulings that the plaintiff could not recover would not have been justified by the consideration that the way was not within the meaning of the statute; and as no request was made for particular instructions applicable to that question, the defendant is not entitled to have it considered here.

2. In the opinion of a majority of the court, it cannot be said, as matter of law, upon the evidence as stated in the bill of exceptions, that the plaintiff was not entitled to recover.   The defendant contends that the plaintiff did not show that the superintendent was negligent, or that the plaintiff was in the exercise of due care, and also that the danger was an obvious one, of which the plaintiff took the risk.   But there was evidence tending to show that the gear on which the timber was loaded was used, loaded, and moved under the explicit personal direction of the superintendent, whose experience in transporting such timbers upon such a gear was great, and who had under his eye the road along which it must travel; that the superintendent gave an explicit order to the men to get on to the timber and hold it down; and that the plaintiff testified that this was his first experience with the transportation of such a timber upon such a gear.   It is plain that the timber as loaded was more likely to tip up, slide, or cant than it would have been if laid with one of its broader sides flat upon the vehicle, and that the superintendent might have ordered safer means to be used to keep the timber from tipping than that of requiring men to get on to the timber and hold it down.   To what extent the experience of the plaintiff in farming, hauling stone, and logging made the danger to which compliance with the superintendent's order would subject him known and appreciated by the plaintiff, whether he was in the exercise of ordinary care in obeying the order, and whether the superintendent was negligent in directing the men to get on the timber and hold it down, were, in the opinion of a majority of the court, questions for the jury.

*Exceptions overruled.*