JAMES FLYNN (afterwards MARGARET WELCH, administratrix), *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   November 10, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence.*

In an action against a railroad corporation for personal injuries, there was evidence that the plaintiff was a weigher of oil in the employ of an oil company and worked in a building used as a filling and shipping house, by the side of which was a railroad track belonging to the oil company and kept in repair by that company but used for the transportation of oil by cars and an engine owned and operated by the defendant, that on the opposite side of the track was a platform belonging to the oil company, that when there was no train on the track

the opposite platform was connected with the door of the building by movable skids placed across, and that the plaintiff usually removed and replaced these skids whenever cars were to be run in or out upon the track, that on the day of the accident the skids by some oversight had not been removed, and that two cars, which had been disconnected from an engine, ran on a down grade upon the track, breaking the skids and throwing them down behind the trucks of the second car, which was a tank car, that the cars were stopped, and a conductor, in charge of the cars, who was standing at the rear of the tank car, called to the plaintiff " to come and pick up the skids," that the platform of the tank car was opposite and entirely across the doorway of the shipping house, and the only practicable way for the plaintiff to reach the broken skids quickly was to pass over the car to the platform on the other side of the track, that, while the plaintiff was attempting to cross in this way, the engineer in obedience to a signal from the brakeman backed down the engine to recouple the detached cars, and the impact caused the plaintiff to lose his footing, and he fell and was caught and rolled between the car and the wall of the building. There also was evidence that, before the plaintiff had come fully upon the car, the conductor signalled to the brakeman to couple the cars. *Held*, that it could not be ruled as matter of law that the plaintiff was negligent or that he assumed the risk of the accident; that the call of the conductor to the plaintiff " to come and pick up the skids " could be found to be, not a command of employment, but a request to the plaintiff as an employee of the oil company, with an intimation that he had neglected his duty in not removing the skids previously; that an express or implied invitation to the plaintiff to use the car in passing to the platform was within the authority of the conductor, who had been put in charge of the train by the defendant, and that the questions whether the plaintiff was upon the car by the defendant's invitation and whether while there he was injured by reason of the negligence of the defendant's servants were for the jury.

TORT for personal injuries incurred on April 16, 1902, in the manner stated in the opinion, by James Flynn, a minor, while in the employ of the Standard Oil Company and at work in its yard in that part of Boston known as East Boston, alleged to have been caused by the negligence of the servants of the Boston and Maine Railroad, the defendant, in operating an engine and a train of cars in that yard. Writ dated March 4, 1903.

The action originally was brought by James Flynn, by his next friend Margaret Welch. On June 7, 1905, the plaintiff died, and Margaret Welch, having been appointed the administratrix of his estate, was permitted to appear and prosecute the action as such administratrix.

In the Superior Court the case was tried before *Brown*, J. The evidence, which was conflicting, is described in the opinion. At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*E. M. Shanley*, for the plaintiff.

*A. R. Tisdale*, for the defendant.

BRALEY, J.  The plaintiff's intestate, James Flynn, was employed by the Standard Oil Company to weigh oil, or perform other light work as he might be directed.  In the performance of his duties as weigher, he worked in a building used as a filling or shipping house, which is referred to in the exceptions as " the platform room or covered platform."  In close proximity to this building, the door of which opened upon it, was a railroad track used to run tank cars to the works, where they were loaded or unloaded as the oil company might direct.  Directly opposite to the covered platform was an open platform, upon which movable skids were placed extending across the track to the doorway of the building, affording when the track was not in use a convenient means of communication.  Among other duties, the decedent usually removed and replaced the skids, whenever cars were to be run in or out of the yard.  By some omission or oversight, the skids had not been removed on the day of the accident, before a train came in, made up of a shifting engine with " about seven cars."  In coming in, the train broke apart, leaving two cars connected with the engine, while the remaining cars running on a down grade struck the skids with such force as to break and throw them behind the trucks to the ground.  The evidence was conflicting, but the jury could have found, that the conductor, who stood on the tank car at the extreme rear, and saw the skids, upon ascertaining that they had been struck and that this part of the train had been stopped by the collision and by the setting of the brakes on the car, called to the decedent, who was in the covered platform, " to come and pick up the skids."  It appears that the platform of the tank car when the car stopped was not only opposite to the doorway, but extended its entire width, leaving a space of about five inches between the wall and the car.  A finding would have been warranted, that the only practicable method of quickly reaching the skids was to pass over the car to the further side of the track, and the " outside " platform.  It was while Flynn was attempting to cross, and as he stepped on and took hold of the iron railing, that the engineer in obedience to a signal from the brakeman backed down to recouple the detached cars.

The impact forced the tank car suddenly forward, causing the decedent to lose his footing. In falling, he was caught and rolled between the wall and the car, receiving severe injuries. The evidence of the conductor as to his conduct is inconsistent with the evidence of the other witnesses, and there was testimony that, when the tank car had been stopped and while the decedent in the conductor's presence was getting on in response to what had been said, the conductor before the decedent had fully boarded the car or had reached a place of safety, signalled the brakeman, who obeyed the order, to couple the cars. It is manifest upon this evidence, and the inferences which could have been properly drawn, that it could not have been ruled as matter of law, as the defendant contends, that Flynn either was negligent, or assumed the risk. The car was stationary, the conductor in control of the movements of the train was present, and the skids were behind the car on the track from whence he had been asked to remove them. When viewed in the light of common experience, and the ordinary prudence of men, the decedent would be justified in assuming, that under these conditions the conductor would not deliberately give an order, the result of which, as he should have known, would be to cause the car to move suddenly, exposing him to the chance of being injured, without giving some caution or warning. This question was for the jury. *Leavitt* v. *Leavitt,* 158 Mass. 355. *Mears* v. *Boston & Maine Railroad,* 163 Mass. 150. *Hartford* v. *New York, New Haven, & Hartford Railroad,* 184 Mass. 365. *Hanley* v. *Boston Elevated Railway,* 201 Mass. 55, 58, and cases cited.

But the principal contentions of the defendant are, that Flynn, being either a volunteer or mere temporary servant of the defendant, assumed any risk arising from the negligence of his fellow servants, or that he was a trespasser or at most a licensee. If the call of the conductor " to come and pick up the skids " was a command which Flynn recognized as such and obeyed, they became fellow servants. It was, however, a question of fact under suitable instructions, whether there was a temporary change of employers by the voluntary submission of Flynn to the control of the defendant. *Bowie* v. *Coffin Valve Co.* 200 Mass. 571, 578. *Cain* v. *Hugh Nawn Contracting Co.* 202 Mass.

237.  *Berry* v. *New York Central & Hudson River Railroad*, 202 Mass. 197, 204.  The jury could have said that it was only a request, or an abrupt reminder, that he had neglected his duty in not previously removing the skids.  If, however, no change of employment was found to have been effected, yet, if Flynn was a trespasser or a bare licensee, using the car while performing service for the oil company, the defendant owed to him no duty except to refrain from reckless and wilful acts of injury. *Heinlein* v. *Boston & Providence Railroad*, 147 Mass. 133.  The uncontradicted testimony of the defendant's conductor, and the foreman of the oil company, showed, that the track was owned and kept in repair by the oil company, although operated by the defendant, to whom the cars and engine belonged.  But if as to the employees of the oil company, who also were rightly there, this exclusive occupation continued until delivery had been completed, an express or implied invitation to use the car was within the authority of the conductor, who had been put in charge of the train.  *Ramsden* v. *Boston & Albany Railroad*, 104 Mass. 117, 121.  The interpretation which should be given to his words and conduct in connection with all the surrounding conditions was a question of fact.  It is true the conductor testified that he told Flynn not to get on, but from the version given by the plaintiff's witnesses, which the jury were at liberty to accept, they could say that he stepped on the car because of the conductor's request.  If in the operation of the train it was of advantage and benefit to the defendant that the obstruction should be speedily removed, an invitation to use the car in the emergency could be inferred after Flynn had been asked to act.  *Plummer* v. *Dill*, 156 Mass. 426, 427.

If, in response to the invitation and through no fault of his own while there, he was injured by the negligence of the defendant's servants, the defendant is responsible.  *Wagner* v. *Boston Elevated Railway*, 188 Mass. 437, 439, and cases cited ; *Robertson* v. *Boston & Northern Street Railway*, 190 Mass. 108.

We are accordingly of opinion that the case should have been submitted to the jury.

*Exceptions sustained.*