SADIE B. SANDON, administratrix, *vs.* MINOTT K. KENDALL.

Worcester.    March 14, 1919. — June 24, 1919.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Toward employee of independent contractor, Volunteer.  *Agency,* Existence of relation, Scope of authority.

The owner of certain poles, delivered to him in a railroad car in a railroad yard, made a contract with a teaming contractor to unload the poles and carry them to designated locations, the owner undertaking to have the car moved where the teaming contractor wished. At the unloading of the car there were present two employees of the teaming contractor and an employee of the owner. The contractor used a gin pole twenty-five to twenty-eight feet in height to remove the poles from the car, the foot of the pole being placed in a hole in the ground eighteen inches to two feet deep and its base being secured to the railroad rail and to the side of the car. It becoming necessary to move the car after it had been partially unloaded, the employee of the owner gave orders to the teamster's employees to hitch horses to the front of the car, to loosen the supporting chains and to move the car without taking down the gin pole or taking further precautions. The employees of the contractor being unable to move the car, a passerby, not in the employ either of the owner or of the contractor, was asked by an employee of the contractor to "give us a hand." As he was complying with the request, the pole fell upon him and he was killed. At the trial of an action against the owner of the poles to recover for causing the death, the jury found for the plaintiff, and, upon exceptions by the defendant, it was *held,* that .

(1) The questions, whether the decedent was in the exercise of due care or had assumed the risk of the injury, were for the jury;

(2) There was evidence of negligence on the part of the defendant's employee in directing the moving of the car without removing the gin pole or taking proper precautions for its support;

(3) There was evidence warranting a finding that the defendant's employee had at least implied authority to direct the moving of the car;

(4) There was evidence that the employee of the contractor had implied authority from the contractor to call the decedent to assist in moving the car;

(5) It could not be ruled as a matter of law that the contractor's employees, in obeying directions of the employee of the owner of the poles as to moving the car, became his fellow servants;

(6) The evidence warranted findings that the decedent, in assisting the employee of the contractor at his request, became his fellow servant;

(7) It could not be ruled as a matter of law that the decedent was a mere volunteer or a licensee to whom the owner, or his employee, owed no duty of carefulness; and, if it were found that he had become a fellow servant of the employees of the contractor, he was owed the same duty as was owed to them by the owner and his employee.

(8) A verdict for the plaintiff was warranted.

TORT for causing the death of the plaintiff's intestate, Joseph E. Bergeron. Writ dated October 6, 1917.

In the Superior Court the action was tried before *Fox*, J. The material evidence is described in the opinion. At the close of the evidence the defendant moved that a verdict be ordered for him. The motion was denied. He then asked for rulings, the following of which were refused: ·

"1. On all the evidence, the plaintiff is not entitled to recover against the defendant in this action."

"4. If the jury find that the plaintiff's intestate was asked by a servant of Newell to aid in moving the car, and was killed by helping to move the car in response solely to that invitation, the plaintiff cannot recover against this defendant."

"6. One volunteering to help in the work of some one other than his employer, in which work he himself or his employer has no personal interest, has no greater rights in the matter of recovery for injury, than an employee of the person to help in whose work he volunteered.

"7. The plaintiff's intestate cannot in any event recover except under circumstances where an employee of the defendant might recover."

"9. The defendant owes the plaintiff's intestate no greater duty than he owed his employee — Lee.

"10. One who without protecting or promoting any interest of his

own assists in the service of another cannot recover for injury while so acting, nor can there be recovery for his death while so acting, unless the injury or death was the result of wanton or wilful misconduct.

"11. A master owes no duty except to prevent wanton or wilful injury to one who without protecting or promoting any interest of his own, assists in the master's service."

."15. It cannot be fairly presumed from the evidence in this case that Lee had authority to ask of the plaintiff's intestate temporary or transient assistance, whereby the defendant became responsible for Lee's negligence."

"18. One who is employed by a servant as an emergency assistant in doing a master's work, becomes subject to all the obligations of a servant, and can recover for injury only under the circumstances where a servant directly employed by the defendant could recover.

"19. If the jury find that the work being done at the time of the injury of the plaintiff's intestate, was being done by an independent contractor, the plaintiff cannot recover in this action.

"20. If the jury find that the work being done at the time of the injury of the plaintiff's intestate was done under the direction of the servant of Newell, the plaintiff cannot recover in this action.

"21. If the servant of Newell had authority from Newell to direct the work of unloading the car, and Lee had no such authority, the plaintiff cannot recover, if Lee, without authority from the defendant, wrongfully assumed to direct such work."

"23. If the plaintiff's intestate was an employee of the defendant within the meaning of the workmen's compensation act, there can be no recovery in this action."

"26. If the jury finds that Lee was in charge over Newell's men, Paine and Gray, in unloading and moving the car, Bergeron by his act in helping did not become a servant of Newell.

"27. If the jury find that Lee was in charge over Newell's men, Paine and Gray, in unloading and moving the car, Bergeron by his act in helping became a servant of the defendant, rather than of Newell, and cannot recover.

"28. In any event, Bergeron can be in no better position than that of a servant of the defendant, if the jury find Lee was in charge over Newell's men, Paine and Gray."

The defendant's fifth ruling, which, as stated in the opinion, was given, was as follows:

"There is no evidence to warrant a finding that Lee had authority to bind the defendant in the matter of securing the aid of the plaintiff's intestate in moving the car."

The jury found for the plaintiff in the sum of $1,750; and the defendant alleged exceptions.

*C. H. Donahue, (W. E. Waterhouse* with him,) for the defendant.

*G. R. Farnum, (E. E. Ginsburg* with him,) for the plaintiff.

DE COURCY, J.   The plaintiff seeks damages for the death of her intestate, Joseph E. Bergeron, who was struck by a falling "gin pole," receiving injuries from which he died without conscious suffering. There was evidence to warrant the finding of the following facts:

The defendant had a contract to erect poles and wires for an electric line from Uxbridge to Milford.   He engaged one Newell, who was in the teaming business, to unload the poles from the cars in the railroad yard at Uxbridge, and to carry them to designated locations.   A gin pole was used for lifting the poles from the car and putting them upon a wagon or "reach."   This pole was like a single mast derrick without guys; it was twenty-five to twenty-eight feet in length, was set in a hole in the ground eighteen inches to two feet deep, and was secured to the railroad track and to the car by chains.   In the process of the work of unloading it became necessary to move the partially unloaded car.   The defendant was not there at the time, but one Lee, his only employee on the job, gave orders to have the car moved and told Newell's men to hitch on the horses to the front of the car.   Two of Newell's men were there at the time, Paine and Gray.   The chains were taken off, and the gin pole was pried away from the car about two inches, to enable them to move the car by the pole.   Bergeron, who was not in the employ of either party, came along, and Gray asked him to "give us a hand."   Bergeron put his shoulder to the car, and was pushing it with the other men when the pole fell and struck him, fatally injuring him.

The questions of the intestate's due care, and his assumption of the risk, plainly were for the jury, and the burden of proof was on the defendant.

There was evidence to warrant a finding that the accident was due to Lee's negligence.   He gave the orders to move the car with-

out taking down the unsupported gin pole, as was customary, and without taking any precautions to prevent its fall, although it showed signs of being unsteady.

The jury could find also that Lee was acting within the scope of his employment in giving directions to move the car. Newell, who was an independent contractor, testified, "we had nothing to do with moving the cars, we simply unloaded the poles;" and Smith, the representative of the defendant who engaged Newell, testified that he "asked . . . where he [Newell] wanted the car left to be convenient for unloading and said he would have it placed wherever Newell wished." Lee was the only representative of the defendant on the job. The jury could infer that he had at least implied authority to attend to the moving of the car. They were not obliged to accept the testimony that his only duty was to show Newell's men where to place the poles. In fact Newell testified that Lee was "in charge of this team," that "he [Newell] told his men when they left the stable to do what the man in charge told them," and that he heard Lee give orders to these men.

As the defendant argues, the case did not go to the jury on the theory of the workmen's compensation act with the defences removed; and if Bergeron became in fact the fellow servant of Lee the defendant would not be liable, under the present declaration, as the negligence relied on would be that of a fellow servant. In this connection the judge gave the defendant's fifth request, and called to the jury's attention the theory on which the plaintiff was proceeding in the case, "that it was not Lee who called for Bergeron but that it was Gray, one of Newell's employees, who called him for help, and that then Bergeron having been called on the job by Gray stands in the same position with regard to the employer of Lee that Gray would himself have stood in if he had been hurt." We cannot say as matter of law that there was no evidence to warrant this contention of the plaintiff. If Bergeron undertook to assist Gray in performing service which it was Gray's duty to perform under Lee's orders, then the jury could find that he (Bergeron) stood in the relation of a fellow servant of Gray while engaged in such service, and that he did not become a temporary servant of the defendant. *Barstow v. Old Colony Railroad,* 143 Mass. 535. *Flynn v. Boston & Maine Railroad,* 204 Mass.

141, 144. See *Berry* v. *New York Central & Hudson River Railroad,* 202 Mass. 197, 202. The mere fact that Gray, acting under the general instruction of his employer Newell, rendered assistance to Lee, did not constitute him a fellow servant of Lee. *Sprague* v. *General Electric Co.* 213 Mass. 375, 378. And the jury could find that Gray had implied authority to procure the temporary assistance of Bergeron in the necessary act of moving the car, which the three men present were unable to move, and when no other employees of the defendant or of Newell were available. *Hollidge* v. *Duncan,* 199 Mass. 121, 123. See L. R. A. 1915 F 1125 note. In responding to the request of Gray, Bergeron was not a mere volunteer or licensee.

The defendant's first, fourth, seventh, ninth, tenth and eleventh requests were denied rightly. The others, so far as applicable to the plaintiff's case as submitted to the jury, were properly covered by the charge.

*Exceptions overruled.*