CHARLES COULOMBE, administrator, *vs.* HORNE COAL
COMPANY.

MAE S. THOMAS, administratrix, *vs.* SAME.

Middlesex.  December 8, 9, 1930. — April 2, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Negligence,* Licensee, Causing death, Of one owning or controlling real
estate.  *Agency,* Scope of authority.  *Evidence,* Competency; Opinion:
expert.  *Practice, Civil,* Exceptions, Entry of judgment under G. L.
c. 231, § 122.

In matters where technical details, complicated machinery or forces not
generally understood by the ordinary man are involved, jurors may
be assisted in reaching a just opinion of their own by learning the
opinion of persons trained in special knowledge or experience of the
facts concerned.  Per WAIT, J.

In an action of tort by an administrator for the death of the plaintiff's
intestate, there was uncontradicted evidence that the intestate, a
truck driver, in accordance with instructions of his employer deliv-
ered a load of crushed stone and then went to the defendant's coal
yard for a load of coal; that there an employee of the defendant
requested him to help move a coal conveyer, which was a heavy
machine containing an endless belt driven by electricity; and that
the intestate and the employee, upon taking hold of the conveyer,
were killed by a shock caused by electric current passing through the
conveyer from a cut in the insulation of a wire connected therewith.
There was no evidence of express authority to the defendant's em-
ployee to ask assistance of the intestate nor of any practice or custom
for waiting drivers, not employed by the defendant, to assist the
defendant's employees in the loading of their trucks or in the han-
dling of loading appliances.  It was agreed that no wilful, wanton or
reckless misconduct on the part of the defendant contributed to the
accident.  *Held,* that

(1) A general exception by the defendant to testimony by a com-
panion of the intestate that the defendant's employee requested the
intestate to help him move the conveyer, where no request was made
to limit the application of the evidence, must be overruled: this evi-
dence was competent to explain the conduct of the intestate and to
show what took place, even if the defendant's employee was without
authority to extend the invitation;

(2) Testimony by an expert that the conveyer was a dangerous
machine to have in operation, his opinion and the reasons for it were
not incompetent on the ground that he was passing upon a question
for the jury: his opinion was to be drawn from admitted or assumed
facts as itself a fact to be weighed by the jury;

(3) In the circumstances, in assisting to move the conveyer the intestate stood toward the defendant in the position of at most a mere licensee, to whom the defendant owed no duty other than to refrain from wilful, wanton and reckless misconduct;

(4) The plaintiff was not entitled to recover;

(5) Since the plaintiff could not recover, there was no prejudicial error in the exclusion, subject to an exception by the plaintiff, of certain evidence, which, if admitted, would not have entitled the plaintiff to go to the jury.

The action above described came before this court, after verdict for the plaintiff, upon exceptions by the defendant to the denial of a motion that a verdict be ordered in his favor and to the admission of certain evidence, and upon an exception by the plaintiff to the exclusion of the evidence offered by him; and, the exception of the plaintiff being overruled and the exception of the defendant to the refusal to order a verdict in his favor being sustained, in the circumstances judgment for the defendant was ordered under G. L. c. 231, § 122.

Two ACTIONS OF TORT.  Writs dated January 15, 1929.

The actions were tried together in the Superior Court before *Beaudreau*, J.  Material evidence is stated in the opinion.  The judge denied a motion by the defendant in each action that a verdict be ordered in its favor.  There was a verdict for the plaintiff in the sum of $5,000 in each action.  All parties alleged exceptions.

*J. M. Maloney*, (*M. J. Cohen* with him,) for the defendant.
*M. G. Rogers*, (*N. Peikes* with him,) for the plaintiffs.

WAIT, J.  These are actions under G. L. c. 229, § 5, in the amended form appearing in St. 1925, c. 346, § 9, which makes liable in damages "a person who by his negligence or by his wilful, wanton or reckless act, or by the negligence or wilful, wanton or reckless act of his agents or servants while engaged in his business, causes the death of a person in the exercise of due care, who is not in his employment or service."  They are before us upon bills of exceptions of the plaintiffs and of the defendant after verdicts for the plaintiffs.  It is conceded that no wilful, wanton or reckless conduct contributed to the injury; and that the defendant is not liable if the deceased persons were employees of the defendant or volunteers in assisting a servant of the defendant to move the conveyor which communicated the electric shock that killed them.

The uncontradicted evidence introduced by the plaintiffs

was, in substance, as follows: Coulombe and Thomas on Saturday, July 28, 1928, were employed by one Pallotta as drivers of trucks; and had received orders that, after delivering their loads of crushed stone at the destination in Lowell, they should proceed to the coal yard of the defendant, obtain loads of coal and take them to Pallotta at Dracut. Accordingly, between half past nine and ten o'clock in the forenoon, they arrived at the coal yard where they found no one at hand to serve them; but, on their calling, one Heald, an employee of the defendant, came toward them, and asked them to come and help him move the conveyor (a machine used in loading coal). They went with him. Coulombe and Thomas grasped the wheels, Heald stood by the foot. The three moved the conveyor, and fell dead. This conveyor was made of iron. It was twenty-one feet long, weighed about fifteen hundred pounds, and was mounted on two wheels. An endless rubber belt with transverse rubber cleats was moved by endless chains driven by electricity transmitted from a main through an armored cable from plug-in boxes distributed about the coal yard, to a switch box in the iron frame of the conveyor. The conveyor had been used that morning in loading four trucks from a coal pile in the yard; and the supervisor of receipt and delivery of coal, whose duty it was to care for it, finding it so situated that the cable was extended to nearly its full length, had forbidden Heald, who attended to loading, to move it further from the plug-in box, lest the strain should pull out the plug and delay work. Nothing in its working had indicated any defect in conveyor or wiring that morning. It had been in use for about ten years, without complaint. It had been inspected two months before the accident by State inspectors who made no report of any defect. The supervisor could not state when he had last examined it. He had put a rope upon it to hold up the cable so that it should not chafe upon the sharp edges of the switch box. This rope had become somewhat worn. After the accident, examination showed a cut through the insulation of a wire between the cable and the switch gear operating the endless cable, near

the edge of the switch box.  Electricity passing from this wire to the iron box and iron conveyor and then through the bodies of the men to the moist ground was, undoubtedly, the cause of their deaths.

There was no evidence of express authority to Heald to ask assistance of the deceased teamsters, and none of any practice or custom for waiting teamsters, not employed by the defendant, to assist the defendant's employees in the loading of their teams or in the handling of loading appliances.  Heald at the time was the only one of the defendant's employees on hand for loading.

The defendant excepts to certain rulings upon evidence, to the refusal to direct verdicts for the defendant, to certain refusals to give instructions requested, and to a portion of the charge.  We find no error in the rulings upon evidence.

The father of Coulombe was riding with him upon his truck and was the only living witness to the accident.  He was allowed to testify that Heald requested Coulombe and Thomas to help him move the conveyor.  This evidence was competent to explain the conduct of the two drivers and to show what took place, even if Heald was without authority to extend the invitation.  No request was made to confine its application.  No good exception lies to the general admission of evidence which is competent, responsive and material in any aspect of the case, unless a request be made and refused to confine it to its technical bearing.  *Irwin* v. *Worcester Paper Box Co.* 246 Mass. 453.  *Ferris* v. *Ray Taxi Service Co.* 259 Mass. 401, 404.

The evidence of the expert Lawrence that the machine was a dangerous one to have in operation, his opinion and the reasons for it were not incompetent on the ground contended for by the defendant that he was passing upon the question for the jury.  In matters where technical details, complicated machinery or forces not generally understood by the ordinary man are involved, jurors may be assisted in reaching a just opinion of their own by learning the opinion of persons trained in special knowledge or experience of the facts concerned.  To assist them is the function of the expert witness.  If he is asked to express an opinion on the credi-

bility of witnesses or to determine the issues involved in the action, his answer is to be excluded; but where an opinion is to be drawn from admitted or assumed facts as itself a fact to be weighed by the jury, his testimony is competent, even though it may be the duty of the jury to form their opinion upon the same matter. *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169. *Woodbury* v. *Obear,* 7 Gray, 467. *Commonwealth* v. *Russ,* 232 Mass. 58, 73. His reasons may be given, so that the jury may estimate justly the weight of his opinion.

The defendant contends that as matter of law no liability could be established on the evidence. To persons who came upon its premises in consequence of an invitation to do business with it, it owed a duty to have the premises reasonably safe for the common purpose. *Statkunas* v. *L. Promboim & Son, Inc.* 274 Mass. 515, 519, and cases there cited. The deceased teamsters were in the coal yard in consequence of such an invitation. Nevertheless, no invitation to assist the coal yard men in loading or in handling loading machinery was extended to them by the general welcome to come thither to get loads of coal, or by any practice or custom known by them to be usual in the coal yard. *Walker* v. *Winstanley,* 155 Mass. 301. *Butler* v. *Mechanics Iron Foundry Co.* 259 Mass. 560. No ostensible authority existed in Heald to invite assistance. *O'Leary* v. *Fash,* 245 Mass. 123. There was no such emergency that authority could be implied from the circumstances. See *Hollidge* v. *Duncan,* 199 Mass. 121, 123. In acting upon his request they ceased to stand as persons to whom a duty to maintain the premises in safe condition was owed by the defendant. They stood in the position, at best, of bare licensees, to whom no duty was due other than to refrain from wilful, wanton and reckless conduct. *Bruso* v. *Eastern States Exposition,* 269 Mass. 21, 24–25. *Moffatt* v. *Kenny,* 174 Mass. 311. It is agreed that no wilful, wanton or reckless conduct contributed to the accident. In the absence of breach of duty, there was no actionable negligence. *Bergeron* v. *Forest,* 233 Mass. 392. It follows that the defendant was entitled to the directed verdicts for which it moved, and

its exception to the refusals must be sustained. The case is unlike the cases, upon which the plaintiffs relied, of *Hollidge* v. *Duncan, supra, Flynn* v. *Boston & Maine Railroad,* 204 Mass. 141, *Sprague* v. *General Electric Co.* 213 Mass. 375, *Sandon* v. *Kendall,* 233 Mass. 292, *Lyttle* v. *Monto,* 248 Mass. 340, *Lamberti* v. *Neal,* 253 Mass. 99, and *Lessard* v. *Kneeland,* 257 Mass. 455.

The other exceptions of the defendant need not be considered.

The plaintiffs' bill of exceptions relates to rulings excluding evidence that Coulombe, when delivering his load of crushed stone, stated to the city workman engaged in spreading the stone that he would be back that morning with another load; and that the workman answered that unless Coulombe could get the stone on the job before half past eleven o'clock there was no use in bringing it because on Saturday there would be no one at work to spread it after that time. In view of the decision reached upon the defendant's exceptions, we need not discuss these rulings at length. If admitted, the evidence would not have entitled the plaintiff to go to the jury. No prejudicial error resulted from its exclusion. The exceptions are overruled.

As the exceptions of the plaintiffs are overruled and the exception of the defendant to the refusal to direct verdicts in its favor is sustained, pursuant to G. L. c. 231, § 122, the order in each case will be

*Judgment for defendant.*