GILBERT LAWSON, JUNIOR, *vs.* ROYAL RIDING STABLES, INC.

GILBERT LAWSON *vs.* SAME.

Berkshire.     September 19, 1939. — March 27, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Agency*, What constitutes. *Negligence*, Employer's liability: duty to warn.

Attending circumstances warranted a finding of implied authority given by the manager of a stable to an employee to request a boy, who was not expressly employed, to assist in bringing up horses from a pasture so that one of them could be held at the stable for examination by a visitor; and if the boy was so engaged, the proprietor of the stable owed him a duty to use due care for his safety.

Evidence warranted a finding that the manager of a stable, by whose authority a boy had been engaged to help bring up a horse from pasture, was negligent in failing to warn and instruct him respecting dangers attending such a proceeding, as a result of which the boy was trampled by the horse and injured.

TWO ACTIONS OF TORT. Writs in the Superior Court dated May 11, 1937.

Before *Dillon*, J., there was a verdict for each plaintiff in the sum of $300.

*H. L. Harrington*, for the plaintiffs.

*W. J. Donovan*, for the defendant.

DONAHUE, J. The first of these two actions was brought on behalf of a minor, hereinafter referred to as the plaintiff, to recover damages for personal injuries received when

struck by a horse on the premises of the defendant. The second action was brought by his father to recover consequential damages resulting from such injuries. The cases were tried together before a jury and there was a verdict for the plaintiff and for his father. Thereafter, upon leave reserved, the judge entered a verdict for the defendant in each case. G. L. (Ter. Ed.) c. 231, § 120. To this the plaintiffs excepted.

Viewing the evidence in its aspects most favorable to the contentions of the plaintiffs the jury would have been warranted in finding the facts here related.

The defendant, a corporation, owned and operated in the town of Adams, a stable where horses were kept "for riding, selling and exchange." A man named Katz was president, treasurer and manager of the defendant corporation. A man named Andrews was employed by the corporation as a stableman. Other employees received their instructions from Katz, and Andrews "had nothing to do about the other employees' work." A boy named Brown was also employed at the stable, and another boy, whose name was Clayton, "worked there at odd times." At the time of the plaintiff's injury Andrews and Clayton were the only employees of the defendant on the premises.

There was on the premises a building used as a stable for the horses. Behind the building was "a large pasture." There was an office in a corner on the first floor of the building and a door from the office provided access to the stable from the area in front of the building. In front of the building and between it and the street, the defendant maintained a "pony pen" where children rode ponies.

The plaintiff, a twelve year old boy, for some time before the day of his accident had "frequented" the premises of the defendant. He had often led ponies ridden by children in the "pen" and had received tips from their parents for such service. There was no evidence that Katz ever requested the plaintiff to render such services or paid him therefor, or that Katz personally ever asked the plaintiff to do anything on the premises. There was evidence that the plaintiff did "odd jobs" at the stable such as watering,

feeding and cleaning horses at the request of Andrews, and that Katz was sometimes present when such requests were made by Andrews. On one occasion, in the absence of Andrews, the employee Brown requested the plaintiff to do some work and Katz was present when the request was made and when the work was done.

On the day of the accident a man came to the stable to look at the horses. At the request of Katz "to bring up a horse" for the visitor to inspect, Andrews did so. A little later Katz asked Andrews "to get the roan horse" referring to a large roan horse weighing fourteen hundred fifty to fifteen hundred pounds. The roan horse "was then, with other horses, loose at the far end of the pasture." There was evidence that this horse was gentle and during the period of the defendant's ownership had exhibited no viciousness.

Katz and the visitor and Andrews were inside the stable when Katz directed Andrews "to get the roan horse." Upon the order being given, Andrews went in to the office and to its outer door. There were then three boys, including the plaintiff, at the "pony pen." At the office door Andrews called for two boys "to help catch the horses." There was evidence that Katz could have heard Andrews' request. Upon the summons of Andrews, one of the three boys remained at the "pen" and the other two boys, one of whom was the plaintiff, came through the office and into the stable passing Katz and the visitor in the stable and going out the rear door. There was evidence that Katz was in a position to see the boys as they went by.

Andrews remained outside the rear door of the stable while the plaintiff and the other boy who was called from the "pony pen" and a third boy, named Clayton, went to the end of the pasture and drove the horses, including the roan horse, up to the stable and into a narrow lane at the end of the stable and there the horses stopped. Andrews who continued to remain at the rear door of the stable told the boys to stop the roan horse if it tried to come out of the lane. The boys let the other horses out into the pasture and stood in a line at the outlet of the lane to block

the escape of the roan horse. Then the roan horse started to run out of the lane. It "wanted to follow" the other horses. It came "charging back" toward the other horses. It "went for" the plaintiff. He tried to get out of its way by climbing a manure pile but the horse "went over him" and "trampled him." There was no evidence that the plaintiff had ever before participated in such an operation.

The fundamental question here in dispute is whether the evidence warranted a finding that such a relationship existed between the defendant and the plaintiff at the time of the injury as to impose on the defendant the duty to use ordinary care for the plaintiff's safety. The defendant contends that the plaintiff in what he did was merely a volunteer and hence, since there was no evidence of wanton or wilful or reckless misconduct chargeable to the defendant, it could not be found liable.

The evidence did not warrant the finding of the existence of the relationship of master and servant created under an express contract of hire. It is, however, not necessary that there be an express contract of hire in order to create a relationship between a master and another person, which imposes on the master a duty as to using care of the same character as the duty owed by him to a person he has employed under an express contract. Such a relationship may be created where a person is requested to give, and gives, necessary temporary assistance to a regular employee.

It is not enough to create such a duty of the master that the third person, of his own volition or at the request of an employee not authorized to ask assistance, is injured while doing work beneficial to the employer. *Coulombe* v. *Horne Coal Co.* 275 Mass. 226, 230, 231. Such a duty does exist if the assistance is given at the request of an employee expressly authorized to ask assistance (see *Lessard* v. *Kneeland*, 257 Mass. 455, 457, 458) or, if such authority may be implied from the attending circumstances, such as where the assistance is necessary and there are not enough employees at hand to perform the work which must then and there be performed. See *Sprague* v. *General Electric Co.*

213 Mass. 375, 378, 379; *Sandon* v. *Kendall*, 233 Mass. 292, 296, 297.

In the present case the jury could warrantably have found that the task given to Andrews by his employer was of such a character as to require the efforts of more persons than the employees of the defendant who were on the defendant's premises at the time, that it was reasonably necessary for the task to be performed at that time since its purpose was to provide an opportunity for the visitor to inspect the roan horse, and that Andrews in asking assistance was not merely making easier for himself a task which he was capable of performing alone. See *Murphy* v. *Barry*, 264 Mass. 557, 559. The jury were also warranted in finding that Katz who, because of his position in the corporation, was authorized to bind it by his conduct and knowledge, heard Andrews request the assistance of the two boys and saw the plaintiff as he started out to give the requested assistance. In the circumstances appearing it could· not rightly have been ruled as matter of law that Andrews was not impliedly authorized by the necessities of the situation to request assistance, or that Katz did not authorize the making of the request or ratify the request after it was made. In the case of *Shea* v. *Gurney*, 163 Mass. 184, 188, on which the defendant relies, there was no such necessity in the work the plaintiff was doing, that authorization of the employee to ask for assistance could be implied.

As the jury could have found that the plaintiff was engaged, at the authorized request of an employee of the defendant, in doing work which benefited the defendant, a duty to use due care for the safety of the plaintiff arose. *Lipari* v. *Bush Terminal Co.* 193 App. Div. (N. Y.) 309; affirmed 233 N. Y. 546. *Baltimore & Ohio Southwestern Railroad* v. *Burtch*, 263 U. S. 540. *Baringer* v. *Zachery*, 206 Ky. 229. *Marschall* v. *Glaeser*, 284 Mich. 56. *Booth & Flynn* v. *Price*, 183 Ark. 975. Compare *Lyttle* v. *Monto*, 248 Mass. 340; *Jackson* v. *Queen*, 257 Mass. 515; *Foley* v. *McDonald*, 283 Mass. 96; *Streeter* v. *Locke*, 295 Mass. 533, 537.

The evidence warranted a finding by the jury that there was a breach of the duty that the defendant owed the plain-

tiff. They could have found that Katz, who had full authority to represent the corporation, heard Andrews summon the boys and saw them respond to the summons. According to two witnesses, what Andrews asked the boys to do was to "help catch the horses." The jury would have been warranted in finding that Katz knew, although the final objective was the catching of the roan horse, that in order to accomplish such result the band of "loose" horses in the large pasture must be rounded up in order to separate the roan horse from the other horses. The jury might also have found that such an operation could not be performed without danger to the participants, especially to a boy of the age of the plaintiff, and that, while the dangers were of such a character that Katz knew or should have known of them, they were not of such a character as to be fully appreciated by the plaintiff, who, so far as appears, had never before participated in such an operation.

In the circumstances that might have been found to exist the conclusion was warranted that Katz was under a duty to warn the plaintiff of the dangers in the situation in which he was placed. It is the duty of a master who puts a servant to work in a place of danger to give him such warnings or instructions as are reasonably required by the age, inexperience or want of capacity of the employee. *Atkins* v. *Merrick Thread Co.* 142 Mass. 431, 433. *O'Connor* v. *Adams*, 120 Mass. 427, 431. *Gagnon* v. *Seaconnet Mills*, 165 Mass. 221, 225. *Redmund* v. *Butler*, 168 Mass. 367. *Gilbert* v. *Guild*, 144 Mass. 601. No such warnings or instructions were given to the plaintiff.

As Katz failed to warn or instruct the plaintiff as to the dangers incident to the work he was set to do, the jury could have found that he was guilty of a breach of duty to the plaintiff, and that the defendant could therefore be found liable even though Andrews was a fellow servant of the plaintiff who negligently contributed to causing the injury.

*Exceptions sustained.*
*Judgment for the plaintiffs on the*
*verdicts returned by the jury.*